SECOND DIVISION

March 30, 2004

No. 1-03-0384

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )

)

JOHN BARRON, ) Honorable

) Kenneth J. Wadas, 

Defendant-Appellant. ) Judge Presiding.

JUSTICE BURKE delivered the opinion of the court:

Following a bench trial, defendant John Barron was found guilty of two counts of felony disorderly conduct (720 ILCS 5/26-1(a)(3) (West 2002)) for declaring to ticketing agents at Midway Airport that he had a bomb in his shoe.  Defendant was sentenced to one year of conditional discharge and 185 days' imprisonment (time considered served).  On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because the evidence showed that his remarks were understood as a joke.  Defendant argues that section 26-1(a)(3) of the Criminal Code of 1961 (Code) (720 ILCS 5/26-1(a)(3) (West 2002)) does not apply to remarks that are understood as jests.  In the alternative, defendant contends that if section 26-1(a)(3) of the Code criminalizes a joking remark that is understood as such, the statute is unconstitutionally overbroad.  For the reasons set forth below, we affirm.

 At 1 p.m. on March 28, 2002, defendant approached the ticket counter of Frontier Airlines at Midway Airport in Chicago, Illinois to check in for a flight he was scheduled to take at 7 p.m. on that date.  Because defendant was too early to check in for his scheduled flight, the ticket agent offered defendant the option of taking an earlier flight so that he could check his bag and enter through security.  Defendant accepted the offer, and the ticket agent began to process defendant for his new flight.

During the check in process, defendant began to ask the ticket agent, "[A]re you going to check me?"  The ticket agent informed defendant that he was not a random selectee, meaning that the computer had not chosen defendant and his baggage to be personally searched at that point, so he would not be searching defendant or his bag.  Defendant then leaned in toward the ticket counter and began waiving his arms in the air while he stuck his right leg forward and said, "I only have one bomb in my shoe."  The ticket agent responded that defendant could not "joke" about possessing a bomb and that he needed to "simmer down right now and not be saying those things."  The ticket agent also detected the odor of alcohol coming from defendant at this time.  Defendant quieted down for a short time before once again getting excited and repeatedly asking the ticket agent if he was going to check him.

Another ticket agent, who was working alongside the agent dealing with defendant, overheard defendant's statement that he had a bomb in his shoe.  This agent also informed defendant not to make comments like that because they were taken seriously. Defendant responded by laughing at the agent.  After defendant began to once again state that his bag should be checked because the agents did not know "what was in his bag," he was informed that if he made one more comment, he would be denied boarding. Defendant once again laughed at the agent, who then notified the police.

Defendant's person and baggage were subsequently searched by police officers and a bomb-sniffing dog.  No bomb was found.  Thereafter, defendant was taken to a police room where he admitted several times to the officers that he told the ticket agent he had a bomb in his shoe.

The State subsequently charged defendant with two counts of felony disorderly conduct.  The statute under which defendant was charged, section 26-1 of the Code, provides, in pertinent part:

"(a) A person commits disorderly conduct when he knowingly:

***

(3) Transmits or causes to be transmitted in any manner to another a false alarm to the effect that a bomb or other explosive of any nature *** is concealed in such place that its explosion or release would endanger human life, knowing at the time of such transmission that there is no reasonable ground for believing that such bomb *** is concealed in such place ***."  720 ILCS 5/26-1(a)(3) (West 2002).

Following a bench trial, defendant was found guilty of both counts of felony disorderly conduct.  Defendant's subsequent motion for a new trial was denied and he was sentenced to one year of conditional discharge and 185 days' imprisonment (time considered served).

On appeal, defendant first contends that the State failed to prove him guilty beyond a reasonable doubt.  Defendant argues that section 26-1(a)(3) of the Code distinguishes between comments which actually "alarm" an individual and those which are understood as joking remarks.  According to defendant, section 26-1(a)(3) only criminalizes remarks which have the effect of frightening a reasonable person in the listener's position.  Defendant claims that because the ticket agents perceived his comments as joking remarks, the State failed to prove all the material elements of the offense of felony disorderly conduct.

When a defendant challenges the sufficiency of the evidence, a reviewing court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Pollock
, 202 Ill. 2d 189, 217, 780 N.E.2d 669 (2002); see also 
People v. Cox
, 195 Ill. 2d 378, 387, 748 N.E.2d 166 (2001).  In the instant case, defendant's first contention also involves construing section 26-1(a)(3) of the Code, which is an issue of law that we review 
de novo
.  
People v. Harrell
, 342 Ill. App. 3d 904, 908, 795 N.E.2d 1022 (2003).

Defendant here attempts to place into section 26-1(a)(3) a requirement beyond that of the transmission of a false alarm. Specifically, defendant argues that section 26-1(a)(3) also requires that, once transmitted, the alarm must cause actual fear in the mind of the listener.  As there have been no Illinois cases discussing this point, defendant cites to several cases from other jurisdictions in support of his contention, including 
Watts v. United States
, 394 U.S. 705, 22 L. Ed. 2d 664, 89 S. Ct. 1399 (1969), 
United States v. Cothran
, 286 F.3d 173 (3
rd
 Cir. 2002), 
United States v. Malik
, 16 F.3d 45 (2
nd
 Cir. 1994), and 
State ex rel. RT
, 781 So. 2d 1239 (La. 2001).  According to defendant, these cases stand for the proposition that, at least in certain circumstances, joking remarks cannot constitute criminal behavior.  However, contrary to defendant's argument, these cases all share a similar fact which easily distinguishes them from the instant matter.

Defendant cites 
Watts
, 
Cothran
, 
Malik
, and 
RT
 for the proposition that courts will utilize an objective test to determine whether a writing or comment constitutes a threat.  While we agree with this contention, we also find it inapplicable to the matter at hand.  In 
Watts
, 
Cothran
, 
Malik
, and 
RT
, the defendants were charged with violating various state or federal statutes that criminalized remarks which threatened or caused fear in a listener.  In 
Watts
, the defendant was charged with violating a statute which prohibits any threat to take the life of or to inflict bodily harm upon the President.  
Watts
, 394 U.S. at 705; see 18 U.S.C. §871(a).  The defendant in 
Cothran
 was charged with violating a statute which prohibited an individual from making a comment that he possessed a weapon or explosive on an airplane which "reasonably may be believed."  
Cothran
, 286 F.3d at 175.  Because the matter was one of first impression, the 
Cothran
 court compared the statute which the defendant was charged under to the statutes at issue in 
Malik
. 
Cothran
, 286 F.3d at 175.  In 
Malik
, the defendant was charged with violating two federal statutes which prohibited mailing threatening communications and threatening to assault a United States judge.  
Malik
, 16 F.3d at 47.  Lastly, in 
RT
, the defendant was charged with violating two state statutes, one of which prohibited terrorizing an individual so that he sustains a fear for his or another person's safety.  
RT
, 781 So. 2d at 1241.

Here, the statute at issue specifically defines the type of behavior that is threatening in such a manner that it is unnecessary to further examine the intent behind the remark or the effect on the listener.  In other words, instead of simply prohibiting "threatening" behavior without defining precisely what that behavior consists of, section 26-1(a)(3) clearly states the nature of the prohibited behavior.  The legislature has acted in this instance to remove the burden of determining when a defendant's behavior rises to the level of disorderly. Specifically, and as related to this case, the legislature has proclaimed that an individual cannot transmit to another person the false comment that an explosive device is concealed in such a place as to endanger human life, knowing that comment to be false.  Unlike the statutes at issue in 
Watts
, 
Cothran
, 
Malik
, and 
RT
, section 26-1(a)(3) itself defines what is threatening, making the "objective test" defendant relies upon unnecessary.

An examination of the legislative intent behind section 26-1 further supports our interpretation.  The principal rule of statutory construction requires this court to ascertain and give effect to the intention of the legislature.  
People ex rel. Sherman v. Cryns
, 203 Ill. 2d 264, 279, 786 N.E.2d 139 (2003).  In affording the statute its plain, ordinary and popularly understood meaning, we must examine all the provisions of a statutory enactment as a whole.  
Cryns
, 203 Ill. 2d at 279.  In so doing, "words and phrases muse be interpreted in light of other relevant provisions of the statute and must not be construed in isolation."  
Cryns
, 203 Ill. 2d at 279-80.

Not only does the plain wording of subsection (a)(3) of section 26-1 make it clear that the crime of felony disorderly conduct is complete upon the transmission of a false alarm to another person, regardless of the effect the false alarm has upon the individual who receives it, but an examination of section 26-1 as a whole demonstrates the purpose behind subsection (a)(3).  Section 26-1 begins by stating that an individual commits the offense of disorderly conduct when he knowingly behaves in any one of 12 enumerated ways.  Subsection (a)(1) generally defines the behavior customarily designated as "disorderly" as, "any act [performed] in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace."  720 ILCS 5/26-1(a)(1) (West 2002).  Compared to subsection (a)(1), the lack of the phrase "alarm or disturb another" from subsection (a)(3) evidences the legislative intent that the offense may be completed upon transmission of the words as described in subsection (a)(3) without regard to their effect on the person who receives them.  720 ILCS 5/26-1(a)(1), (a)(3).  The Committee Comments to section 26-1 further lend support to this interpretation.  The comments state that "the activity covered by [subsection (a)(3)] may be included in the general definition provided by [subsection (a)(1)].
(footnote: -6)  However, to insure[] the prohibition of such conduct and remove all doubt, [subsection (a)(3) has] been specifically included."  720 ILCS Ann. 5/26-1, Committee Comments--1961, at 156 (Smith-Hurd 2003).

In line with our interpretation of section 26-1(a)(3), an individual may be found guilty of felony disorderly conduct upon transmission of a false alarm, regardless of the intention of the speaker or the effect the words have upon the person receiving them.  Just as the false cry of "fire" in a crowded theater may cause panic and harm simply by its utterance, a false claim that a bomb or container holding a chemical, biological or radioactive agent is present in an airport may cause alarm and mass disruption.  In light of our nation's recent history, this fact could not be more clear, nor the purpose behind section 26-1(a)(3) more necessary.

We therefore find that the evidence, when viewed in a light most favorable to the State, supports defendant's conviction.  Clear and credible evidence was presented that defendant informed two ticket agents that he had a bomb in his shoe.  Since defendant was not actually in possession of a concealed explosive device, and had no reasonable ground to believe that he was in possession of an explosive device, the State satisfied all the material elements of section 26-1(a)(3).

Lastly, we briefly note that defendant's alternative argument, that section 26-1(a)(3) is unconstitutionally overbroad, fails.  Defendant argues that the comments he made would be understood by a reasonable person as a joke and, as such, their prohibition by section 26-1(a)(3) infringes on his first amendment right to free speech.  Defendant has completely failed, however, to demonstrate how his remarks were or could be considered jovial.  Subjectively, the record shows that the ticket agents did not perceive defendant's comments as being made in jest.  Although one ticket agent may have told defendant that he could not "joke" about having a bomb, the agents contacted the police, who then employed bomb-searching dogs and arrested defendant.  These actions do not equate with an understanding that defendant was joking.  As one ticket agent testified at trial, agents are required to take all bomb threats seriously. Moreover, we fail to see how an individual in today's climate can be objectively perceived as a prankster when he excitedly and repeatedly announces in an airport that he is in possession of a bomb.  Because the record does not support defendant's claim that his remarks were understood as a joke, and he has not shown that a reasonable person would have understood his comments as a joke, we need not further consider this argument.

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

WOLFSON, P.J., and GARCIA, J., concur.

FOOTNOTES
-6:
The Committee Comments' original reference here to "section 1(a)" appears to be a typographical error.