In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2101

ANNA MUSTAFA,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03-C-6799—**Robert W. Gettleman**, *Judge.*

ARGUED JANUARY 4, 2006—DECIDED MARCH 23, 2006

Before POSNER, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Anna Mustafa sued the defendant police officers for false arrest and violation of her civil rights following an incident at Chicago's O'Hare Airport. The district court granted summary judgment in favor of the defendants because it found that there was probable cause to arrest Mustafa, and even in the absence of probable cause, the defendants were protected by qualified immunity. Because we agree with the district court that the defendant officers acted upon probable cause and, in any event, acted within the scope of their immunity, we reject Mustafa's argument that summary judgment was improperly granted and affirm the ruling of the district court.

## I. BACKGROUND

Anna Mustafa is a 56-year-old American citizen of Palestinian descent and Muslim faith. On December 28, 2001, just three months after the attacks of September 11, Mustafa received word that her father had died in Israel. That afternoon, Mustafa arrived at the Swissair ticket counter at O'Hare, intending to fly to Tel Aviv by way of Zurich, Switzerland to attend her father's funeral. Mustafa was accompanied to the counter by nineteen members of her immediate family. Mustafa ordered a "Muslim" meal for the flight. Moments later, the Swissair clerk took Mustafa to a bomb-detection machine to have her two pieces of luggage inspected for weapons. Mustafa suspected that this was an instance of discriminatory religious or ethnic profiling. Following the inspection, Mustafa complained about her treatment to a Swissair manager, Muhammad Qadeer, who offered to escort her to the gate because the screening was complete. During this exchange, Mustafa was screaming and the area was crowded. Mustafa realized that security personnel had failed to inspect her purse. She did not realize that carry-on bags would be screened at another checkpoint, and she was concerned that if Swissair later realized it had not checked the purse, she would be delayed and miss her flight. Mustafa tried to point out that her purse had not been inspected, saying, "You already checked my luggage. Maybe I have a bomb in my purse. Nobody has checked that." In response to the word "bomb," an employee working at a nearby United Airlines counter began to yell that she had heard the "B-word" and that security should be called. Another manager, Mauricio Penaranda, called the police to report an "unruly" passenger saying the word "bomb."

Within two to three minutes, defendant Officer Susan Schober arrived and observed what she later described as a "commotion." Qadeer informed her that Mustafa had

made a statement like "Maybe I have a bomb in my purse." Officer Schober, Qadeer, Mustafa, and one of Mustafa's sons, Murad Mustafa, spent 20 to 30 minutes in conversation that focused on calming Mustafa down so that she could get on the flight to Zurich. Following this conversation, defendants Sergeant Gawlik and Officer Burke arrived and asked Officer Schober if she had checked Mustafa's purse. Since the answer was no, the two new officers checked the purse, shouting abusively at Mustafa. Sergeant Gawlik placed Mustafa under arrest. Mustafa, her son Murad, and Sergeant Gawlik engaged in a screaming argument during which Sergeant Gawlik insulted Mustafa's family and made a racist reference to the September 11 terrorist attacks three months earlier. Mustafa spent two days in jail before being released on $50,000 bond; she missed her father's funeral. Mustafa was indicted on a charge of Felony Disorderly Conduct—Bomb Threat pursuant to 720 ILL. COMP. STAT. 5/26-1(a)(3), but acquitted following a bench trial.[1]

After Mustafa was acquitted, she filed the instant suit against the City of Chicago and four police officers, which originally contained seven counts. A number of claims, including all those stated against the city, were dismissed. The defendant police officers moved for summary judgment on the surviving counts, false arrest and violation of Mustafa's right to equal protection under the law pursuant to 18 U.S.C. § 1983. The district court granted summary

---

[1] The statute under which Mustafa was charged applies to any person who "Transmits or causes to be transmitted in any manner to another a false alarm to the effect that a bomb . . . is concealed in such place that its explosion or release would endanger human life, knowing at the time of such transmission that there is no reasonable ground for believing that such bomb . . . is concealed in such place." 720 ILL. COMP. STAT. 5/26-1(a)(3).

judgment for the defendants on both counts. This appeal followed.

## II.  ANALYSIS

### A.  There was probable cause to arrest Mustafa.

We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. *McCoy v. Gilbert*, 270 F.3d 503, 508 (7th Cir. 2001). Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution. *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997). This is so even where the defendant officers allegedly acted upon a malicious motive (such as the racism that Mustafa suggests motivated the defendants here). *Simmons v. Pryor,* 26 F.3d 650, 654 (7th Cir. 1993)*, citing Fernandez v. Perez*, 937 F.2d 368, 371 (7th Cir. 1991).

Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed" an offense. *Kelley v. Myler,* 149 F.3d 641, 646 (7th Cir. 1998). The court evaluates probable cause "not on the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer." *Id.*; *see also Woods v. City of Chicago,* 234 F.3d 979, 987 (7th Cir. 2000).

Here, there were at least two separate facts that could have led a reasonable person to believe that a crime had been committed. First, the earliest arriving officer, Officer Schober, observed "commotion" and "agitation" in progress, with Mustafa at its center, at a crowded ticket counter at an international airport. *See* 720 ILL. COMP. STAT. 5/26-1(a)(1)

("A person commits disorderly conduct when he knowingly does any act in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace"). Second, Qadeer, the Swissair manager, told the officers that the plaintiff had said, "Maybe I have a bomb." Once a reasonably credible witness informs an officer that a suspect has committed a crime, the police have probable cause to arrest the suspect. *Id.; Kelley,* 149 F.3d at 647. Qadeer's apparent credibility as a manager of Swissair at O'Hare has not been questioned here. Therefore, based on the undisputed facts, a prudent person might have believed that Mustafa committed the crime of making a false bomb threat.

Mustafa makes much of the fact that Qadeer never actually believed that Mustafa had a bomb in her purse. This argument misapprehends the focus of our review of the circumstances surrounding her arrest. The existence of probable cause does not depend on the actual truth of the complaint. *Woods*, 234 F.3d at 987. The officers were entitled to take Qadeer at his word as to Mustafa's actions. Furthermore, the statute under which Mustafa was later charged applies categorically to all false bomb threats; it contains no element limiting its application to *credible* bomb threats or to those threats that convince the listener. 720 ILL. COMP. STAT. 5/26-1(a)(3).

Likewise, the fact that Mustafa's statement was phrased conditionally, prefaced by the word "maybe," is irrelevant under the plain language of the statute, which forbids any "false alarm to the effect that a bomb . . . is concealed." *Id.* Particularly in light of the time and place of the event, which occurred in an international airport three months after the September 11 attacks, and the understandable sensitivity of air travelers and airport security personnel at that time, it was reasonable for the officers to conclude that Mustafa had committed disorderly conduct by stating that she might have a bomb in her purse.

Finally, Mustafa erroneously suggests that the defendant officers were derelict in their duty to investigate the circumstances surrounding the incident before arresting her. But police officers have no duty to investigate extenuating circumstances or search for exculpatory evidence once probable cause has been established via the accusation of a credible witness. *Anderer v. Jones*, 385 F.3d 1043, 1049 (7th Cir. 2004). They may simply arrest the accused suspect.

## B. The defendants were protected by qualified immunity.

Even if we were to find that there was insufficient probable cause to justify Mustafa's arrest, the doctrine of qualified immunity would nonetheless ensure a ruling in favor of the defendants. Qualified immunity protects officers performing discretionary functions from civil liability so long as their conduct does not violate *clearly established* statutory or constitutional rights that a reasonable person would know about. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). A plaintiff seeking to defeat this defense in a Section 1983 action must show, first, that the plaintiff's rights were violated. *Id.* Second, the plaintiff must show that the law concerning the plaintiff's asserted right was clearly established at the time the challenged conduct occurred. *Id.* Finally, the court must determine whether a reasonably competent official would know that the conduct was unlawful in the situation he confronted. *Id.* Here, Mustafa certainly had a right to be free from an arrest that lacked probable cause, and that right is clearly established, so the only remaining question is whether a reasonable officer could believe that it was lawful to arrest Mustafa.

As discussed above, Mustafa argues that it was unreasonable to believe she had committed a crime because her statement about a bomb was phrased as a possibility

rather than a fact ("*maybe* I have a bomb in my purse"), because any reasonable person would have realized that she was not serious, and because she did not actually frighten or convince anyone that she had a real bomb. However, even if we accepted this argument, this would not disturb the defendants' qualified immunity defense. As discussed above, the Illinois statute at issue applies to implausible and unconvincing bomb threats. *See People v. Barron*, 808 N.E.2d 1051, 1055 (Ill. App. Ct. 2004) (upholding the felony disorderly conduct conviction of an individual who joked about having a bomb in his shoe at Midway Airport, because the statute applies to false threats "regardless of the intention of the speaker or the effect the words have upon the person receiving them"). At the time of the arrest, prior to *Barron*, the application of the bomb threat statute to circumstances involving jokes, sarcasm, etc., was, perhaps, arguable; a court might theoretically read a limitation into the statute and apply it only to *credible* or *convincing* bomb threats. But where the law is open to interpretation, qualified immunity protects police officers who reasonably interpret an unclear statute. Reviewing courts must ask "whether X is a crime under the statute that the police arrested the plaintiff for violating. If the answer to that question was unclear when the arrest was made, the police are entitled to their immunity." *Northen v. City of Chicago*, 126 F.3d 1024, 1027-28 (7th Cir. 1997). Here, the most Mustafa can plausibly claim is that the criminality of her conditional statement was unclear; no case clearly established that implausible threats fall outside of its reach.

Furthermore, even if no reasonable person could have believed that Mustafa had made a genuine bomb threat, the officers might reasonably have believed that Mustafa had committed the closely related offense of nonspecific disorderly conduct under 720 ILL. COMP. STAT. 5/26-1(a)(1), which covers any unreasonable activity which alarms

or disturbs another and provokes a breach of the peace. It is undisputed that Mustafa disturbed employees at the airport and that a noisy confrontation ensued. Officers may arrest individuals suspected of *any* crime; the fact that Mustafa was prosecuted under only the bomb threat section of the disorderly conduct statute does not mean that she could only properly be arrested under that section. Thus, the officers are protected by qualified immunity, and the district court's ruling in their favor is affirmed.

## C.  The defendant-appellees are not entitled to attorneys' fees.

The defendants have moved for attorneys' fees pursuant to Federal Rule of Appellate Procedure 38, 42 U.S.C. § 1988(b), and 28 U.S.C. § 1927. Those provisions permit the discretionary award of attorneys' fees to the victorious party where a losing party has engaged in frivolous appeals or vexatiously and unreasonably prolonged litigation. *See, e.g.*, *Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 129 (7th Cir. 1991) (award of attorneys' fees under Fed. R. App. P. 38 unjustified where brief is not "entirely groundless" and does not contain "blatant misrepresentations"); *Badillo v. Cent. Steel & Wire Co.*, 717 F.2d 1160 (7th Cir. 1983) (prevailing defendants in civil rights cases only entitled to attorneys' fees under § 1988 where plaintiff's goal was to harass or embarrass defendant); *Riddle & Assocs. v. Kelly*, 414 F.3d 832, 835-36 (7th Cir. 2005) (attorneys' fees sanction under § 1927 appropriate where attorney conduct is "objectively unreasonable"). While we agree with the defendants that Mustafa should not prevail, we do not agree that her appeal was objectively frivolous or vexatious in the sense contemplated by these rules and statutes. Mustafa unintentionally provoked a security alarm, and as a result, she suffered a very unpleasant interaction with the defendants that she believed was

unjustified and based on prejudice. In support of that position, she put forth a reasonable legal theory that failed; we see no abuse of the courts or the defendants in that. Nor is there evidence that Mustafa or her attorney is the kind of serial filer who must be deterred from clogging the courts with junk lawsuits in the future (a policy goal of Section 1927). The motion for attorneys' fees is denied.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court. The defendants' motion for attorneys' fees is DENIED.

A true Copy:

       Teste:

                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*

USCA-02-C-0072—3-23-06