NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2151
_____

ROGER VANDERKLOK,
                                        Appellant

v.

UNITED STATES OF AMERICA; TRANSPORTATION SECURITY
ADMINISTRATION (TSA); CHARLES KIESER, (TSA); CITY OF PHILADELPHIA;
RAYMOND PINKNEY, (PHILADELPHIA POLICE); MICHAEL WOJCIECHOWSKI,
(PHILADELPHIA POLICE); KENNETH FLAVILLE, (PHILADELPHIA POLICE);
JEH JOHNSON, (DEPARTMENT OF HOMELAND SECURITY); JOHN S. PISTOLE,
(TSA)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-00370)
District Judge:  Hon. Gerald J. Pappert
_____

Submitted Under Third Circuit LAR 34.1(a)
June 11, 2019

Before:  JORDAN, BIBAS, and NYGAARD, *Circuit Judges.*

(Filed: June 12, 2019)
_____

OPINION*
_____

---

*  This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Roger Vanderklok appeals the District Court's dismissal of his suit against Philadelphia police officers Raymond Pinkney, Michael Wojciechowski, and Kenneth Flaville (the "police officer defendants"). He contends that the District Court erred by concluding that the police officer defendants, whom he sued under 42 U.S.C. § 1983, had probable cause to arrest him, and that the Court further erred in its alternative conclusion that they were entitled to qualified immunity. This is not Vanderklok's first appeal. We previously ruled that Vanderklok was not entitled to a remedy against Transportation Security Administration ("TSA") agent Charles Kieser on his First Amendment retaliation claim. *Vanderklok v. United States*, 868 F.3d 189, 209 (3d Cir. 2017). Having been denied relief against Kieser, Vanderklok now seeks a recovery from the police officer defendants who, based on Kieser's complaint, made the arrest. For the following reasons, we will affirm.

## I.   BACKGROUND

As described in our earlier opinion, Vanderklok was flying from Philadelphia to Miami, where he planned to run a marathon. He proceeded to the TSA security checkpoint and sent his carry-on bag through the X-ray screening device. A section of PVC pipe, containing a heart monitoring watch, and some Power Bars (an energy supplement), were packed in his bag. That evidently prompted TSA agents to ask Vanderklok to step aside for additional inspection. The interaction did not go well, and Kieser called the Philadelphia Police. Officer Pinkney responded. Kieser reported that Vanderklok had "angrily said to [Kieser] that 'anybody can bring a bomb and you

2

wouldn't even know it.'" (App. at 46.) Pinkney then arrested Vanderklok. Vanderklok was placed in a cell and later transported to the Philadelphia Police District, where he was processed by Officer Wojciechowski. Pinkney prepared the Complaint Report, and Wojciechowski completed the Investigation Report, which Officer Flaville approved.

Vanderklok was charged with "Threatening Placement of a Bomb[,]" "Terroristic Threats[,]" and "Disorderly Conduct." (App. at 46-47.) But, at his criminal trial, the court granted his motion for a judgment of acquittal at the close of the prosecution's case. Vanderklok then sued the police officer defendants for claims including ones: (1) pursuant to 42 U.S.C. § 1983 for an unconstitutional search and seizure in violation of his Fourth Amendment rights; (2) pursuant to § 1983 for infringement of his freedom of speech in violation of his First Amendment rights; (3) pursuant to Pennsylvania state law for false arrest, false imprisonment, battery, and assault; and (4) pursuant to Pennsylvania state law and § 1983 for malicious prosecution and retaliatory prosecution.

The police officer defendants filed a motion to dismiss, which the District Court granted. The Court centered its reasoning on what Pinkney, the arresting officer, knew at the time of the arrest, because the propriety of "a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene." (App. at 18 (quoting *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984)).) According to the Court, "the 'objective facts available to' Pinkney were provided by Kieser[,]" and "Vanderklok has not alleged that Pinkney did not find, or should not have found, Kieser to be credible at the time Pinkney made the arrest." (App. at 18-19.) Therefore, the Court concluded, "Pinkney had the 'requisite basis to seize' Vanderklok" and

3

"Wojciechowski and Flaville were entitled to rely on [Keiser's] specific statements." (App. at 21 (quoting *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997)).)

In finding that the officers had probable cause to arrest Vanderklok, the District Court only analyzed the disorderly conduct charge because "[p]robable cause need only exist as to any offense that could be charged under the circumstances." (App. at 18 (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)).) It found probable cause existed because "[m]entions of possessing a bomb or sneaking a bomb through airport security—particularly those [mentions] made 'angrily'—may be cause for alarm and the basis of a disorderly conduct charge." (App. at 20 (citation omitted).) In this case, that statement was "made in a public area with several other passengers nearby." (App. at 11-12 (citation omitted).) Thus, the Court concluded that Vanderklok's words "*risked* causing a disturbance." (App. at 19 (emphasis in original).) In the alternative, it held that, "[i]n the absence of prior case law showing that the decision made by the [police officer defendants] to arrest Vanderklok violated a 'clearly established' Fourth Amendment right, qualified immunity would shield them from liability even if probable cause was missing." (App. at 23.) The Court therefore dismissed all claims against them.

Vanderklok timely appealed.

4

## II. DISCUSSION[1]

Vanderklok argues the District Court erred both in determining that his rights were not violated and that the police officer defendants were entitled to qualified immunity. We need not address Vanderklok's first argument, however, because the District Court properly determined that the police officer defendants were entitled to immunity from this suit.

"[Q]ualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985). Thus, "law enforcement officers acting within their professional capacity are generally immune from trial insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (citation and internal quotation marks omitted).

In order to determine if a right is clearly established, courts "look at the circumstances that confronted [the officer] and … compare [them to] the circumstances present in those cases [in] which [courts] have concluded that there was an absence of probable cause." *Paff v. Kaltenbach*, 204 F.3d 425, 437 (3d Cir. 2000). Only "[i]f there are cases that would make it '*apparent*' to a reasonable officer in [the defendant's] position that probable cause was lacking, [is] qualified immunity … not available." *Id.*

---

[1] The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a dismissal under Federal Rule of Civil Procedure Rule 12(b)(6). *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).

(citation omitted). It is not sufficient that the right be established in a general sense; instead, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Here, Vanderklok has not brought forward any authority, and we can find none, establishing that probable cause to arrest an individual for disorderly conduct is lacking when that individual has made an angry statement about bombs in an airport's TSA screening area. For that reason alone, Vanderklok's argument against immunity fails.

Far from it being clearly established that probable cause was lacking, the most persuasive authority we are aware of supports the conclusion that making comments of the sort Kieser reported would be enough to establish probable cause for a disorderly conduct charge. In *Mustafa v. City of Chicago*, a passenger at an airport was reported to the police for being "unruly" and stating, "Maybe I have a bomb[.]" 442 F.3d 544, 546 (7th Cir. 2006). The Seventh Circuit concluded "it was reasonable for the officers to conclude that [the passenger] had committed disorderly conduct by stating that she might have a bomb in her purse." *Id.* at 548. Vanderklok attempts to distinguish *Mustafa* by contending that the passenger's statement was made in a different manner than Vanderklok's, as he "was not described as screaming or otherwise creating a 'commotion.'" (Opening Br. at 19 (quoting *Mustafa*, 442 F.3d at 547).) But the manner of the passenger's statement was only one ground for determining probable cause existed in *Mustafa*. The other independent ground was the statement itself. 442 F.3d at 547. Moreover, it is undisputed that Kieser told Pinkney that Vanderklok was indeed agitated

6

and angry. In light of *Mustafa*, it is difficult to see how it could be clearly established that Pinkney did not have probable cause to arrest Vanderklok.

Nonetheless, Vanderklok argues that the District Court erred in finding there was probable cause. He asserts that, for two reasons, it was clearly established that the police officer defendants could not legally arrest him. First, he contends that it is clearly established "that the statement 'anybody can bring a bomb and you wouldn't even know it,' when made to a TSA agent at an airport security checkpoint" is a statement protected by the First Amendment. (Opening Br. at 22.) Second, he contends that it is clearly established that a mention of a bomb in an airport security line, without more, "does not establish[] probable cause for an arrest for disorderly conduct[]" in Pennsylvania. (Opening Br. at 13.)

The first of those arguments looks like an effort to move the merits of Vanderklok's First Amendment argument ahead of the qualified immunity defense. But we are focused on the defense, and it requires us to ask not whether Vanderklok had First Amendment rights but whether the law clearly establishes that he had a right to angrily talk about explosives in an airport's security screening area. That is the factual context as Pinkney understood it, and it is the pertinent context for our analysis. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 (3d Cir. 2000) ("The question therefore becomes whether a reasonable person in [the officer's] position could have concluded, based on th[e] knowledge [he had], that [the plaintiff] had committed a crime."). For the reasons already discussed, existing law does not appear to support the right that Vanderklok claims, let alone clearly establishing it. *Mustafa*, 442 F.3d at 548.

7

As for the second argument – that the mere mention of a bomb in an airport security line does not create probable cause for a disorderly conduct charge under Pennsylvania law – it too is unpersuasive. "Whether any particular set of facts …[establishes] probable cause requires an examination of the elements of the crime at issue." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005). "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: … creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa. Cons. Stat. § 5503(a)(4). Based on that catch-all provision, "words or acts [can] rise to the level of disorderly conduct" if "they cause or unjustifiably risk a public disturbance." *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999). Vanderklok points out that a charge of disorderly conduct requires at least reckless intent to cause public inconvenience, annoyance, or alarm. *Commonwealth v. Weiss*, 490 A.2d 853, 857 (Pa. Super. Ct. 1985). And he argues that for words to support such a charge, they "must be uttered with the intent and in a manner to 'cause or unjustifiably risk a public disturbance[,]'" neither of which, he says, applies to his statement. (Opening Br. at 20 (quoting *Hock*, 728 A.2d at 946).)

"The probable cause inquiry looks to the totality of the circumstances[.]" *Wright*, 409 F.3d at 603. Within those circumstances, police officers may "make a judgment call regarding [a] plaintiff['s] state of mind." *Paff*, 204 F.3d at 437. In this case, the police officer defendants were entitled to infer that Vanderklok's angrily making a statement about a bomb in a TSA screening area recklessly created an unjustifiable risk of public

8

disturbance. It is common sense, in light of the shared reality of air travel today, that the risk of a public disturbance by angrily talking about explosives is greatly heightened at an airport's passenger screening area. *Cf. Vanderklok*, 868 F.3d at 207 (noting that security screening is "a critical aspect of national security").

Despite that, Vanderklok asserts that the manner in which he made his statement clearly establishes that there was not probable cause to arrest him. To support that assertion, Vanderklok cites to *Commonwealth v. Weiss*, a decision of the Superior Court of Pennsylvania, for the proposition "that statements made to a single police officer – as opposed to epithets broadcast to all passers-by – [are] too attenuated from the statutory requirement that the conduct be done 'with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof.'" (Opening Br. at 17 (quoting *Weiss*, 490 A.2d at 855).) He further asserts that *Weiss* stands for the view that "the mere potential that a statement made to a law enforcement officer might be overheard does not transform that statement into a deliberate – or even reckless – effort to create public alarm or annoyance." (Opening Br. at 17-18 (citing *Weiss*, 490 A.2d at 855-57).)

The statement in *Weiss*, however, was made on the plaintiff's own property, *id.* at 857, not at a crowded airport security screening area – a vastly different context – meaning *Weiss* cannot clearly establish that the manner in which Vanderklok's statement was made precludes an officer having probable cause to arrest him. And again, the reliance on *Weiss* ignores that Pinkney was operating on the report of Vanderklok's statement as given by Kieser, which described a heated exchange. For the same reason, Vanderklok's reliance on *Commonwealth v. Hock* is misplaced. *See* 728 A.2d at 944, 946

9

(finding probable cause was not present due to a single epithet uttered in a normal tone of voice in an apartment building parking lot in the presence of only the speaker and the officer).

In light of all the circumstances, the District Court rightly determined that the police officer defendants were entitled to qualified immunity.

III.    CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.