

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-11-2002

# USA v. Cothran

Precedential or Non-Precedential:

Docket No. 01-1437

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Cothran" (2002). *2002 Decisions.* Paper 266.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/266

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 11, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1437

UNITED STATES OF AMERICA

v.

MARK WILLIAM COTHRAN,
        Appellant

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. No.: 00-cr-00223
District Judge: Honorable J. Curtis Joyner

Argued: March 4, 2002

Before: SCIRICA and ROSENN, Circuit Judges,
and WARD,* District Judge.

(Filed April 11, 2002)

Dolores M. Troiani (Argued)
45 Darby Road, Suite E
Paoli, PA 19301

  Counsel for Appellant

---

* Honorable Robert J. Ward, United States District Judge for the
        Southern District of New York, sitting by designation.

Jennifer Chun (Argued)
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

  Counsel for Appellee

OPINION OF THE COURT

ROSENN, Circuit Judge.

In the present climate of terrorism, this appeal presents
an important question pertaining to the conduct of a
potential airline passenger. A jury in the United States
District Court for the Eastern District of Pennsylvania
convicted the appellant, Mark Cothran, of conveying false
information and threats about carrying an explosive device
on an airplane, in violation of 49 U.S.C. S 46507. The
District Court sentenced Cothran to ten months
imprisonment, three years of supervised release, a $1000

fine, and a $50 special assessment. Cothran raises three issues on appeal: (1) the Court erred in denying his motion for acquittal based on the sufficiency of the evidence; (2) the Court erred by finding that United States Sentencing Guideline (U.S.S.G.) S 2A6.1 was the most analogous offense guideline for Cothran's crime; and (3) the Court erred by denying Cothran a four-level reduction pursuant to U.S.S.G. S 2A6.1(b)(4). We discern no error and therefore affirm.

I.

On December 29, 1999, Cothran was scheduled to fly from Philadelphia, Pennsylvania, to Atlanta, Georgia, on a U.S. Airways (U.S. Air) flight. That morning, Cothran telephoned the U.S. Air Ticket Reservation Office in Pittsburgh, Pennsylvania. Reservation Sales agent Denise Gaich, now Blanc, answered the call. Cothran stated something to the effect that he was upset with U.S. Air for not letting him bring explosives on the plane, and that he wanted to blow a plane out at 35,000 feet. Blanc perceived this as a threat, and started recording the call.

2

Subsequently, Cothran told Blanc that he was merely joking.

Later that day, while waiting in the airport for a flight from Philadelphia to Atlanta, Kate Stancil (Kate) observed Cothran talking on the phone and heard him say "don't tell me how to blow up a bomb." Joanne Stancil, Kate's mother, also believes she heard Cothran talking about "doing his job and a bomb." (Simultaneously, and in the same vicinity as Cothran, the airport television was tuned to CNN, which was airing a story about bombs.) Kate was alarmed and urged her mother to inform airport security of Cothran's behavior. Her mother did so; Cothran was then arrested based on his earlier phone call and Joanne's complaint.

II.

A. Sufficiency of the Evidence

The standard of review is "particularly deferential" when deciding whether a jury verdict is based on legally sufficient evidence. United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998). It is not our role to weigh the evidence or to determine the credibility of the witnesses. Id.  We must view the evidence in the light most favorable to the Government and sustain the verdict if any rational juror could have found the elements of the crime beyond a reasonable doubt. Id. The appellant carries a very heavy burden on appeal. Id.

Cothran was convicted under 49 U.S.C. S 46507(1), which provides criminal liability if a person:

> knowing the information to be false, willfully and
> maliciously or with reckless disregard for the safety of

> human life, gives . . . under circumstances in which
> the information reasonably may be believed, false
> information about an alleged attempt being made or to
> be made to do an act that would violate section . . .
> 46505 . . . of this title . . . .

49 U.S.C. S 46507(1). Section 46505 criminalizes carrying a weapon or explosive on an aircraft. Thus, the elements here are: (1) Cothran gave false information about an attempt to be made to carry explosives on an aircraft; (2) Cothran

knew the information was false; (3) Cothran acted willfully and maliciously; and (4) under the circumstances, the information reasonably may have been believed. There is no argument but that the first three elements are met. Cothran argues that the information he conveyed could not reasonably be believed, or, more precisely, that no rational juror could have found that a reasonable person would have believed that Cothran was threatening to destroy a plane.

Although there is no case law on S 46507(1), courts have interpreted analogous statutes as requiring an objective test to determine whether something is a threat. United States v. Malik, 16 F.3d 45, 49 (2d Cir. 1994). Moreover, "[t]he use of ambiguous language does not preclude a statement from being a threat." United States v. Fulmer, 108 F.3d 1486, 1492 (1st Cir. 1997). A bad joke can fall within the scope of the statute. In United States v. Irving, 509 F.2d 1325 (5th Cir. 1975), the court sustained a conviction under 49 U.S.C. S 1472(m)(1), the statutory precursor to S 46507(1), when a passenger made a comment about hijacking an airplane. Id. at 1328. The Court of Appeals observed that Congress "was concerned with the prankster as well as with the individual acting out of malice." Id. at 1329. The question is whether an ordinary, reasonable person would view the language as a threat. Malik, 16 F.3d at 49. Another way of looking at this test is asking whether Cothran should have reasonably foreseen that the airline industry is highly sensitive to bomb threats and that his statement would be taken as a threat by the U.S. Air reservationist. United States v. Freeman, 176 F.3d 575, 578 (1st Cir. 1999). In determining whether something is a threat, "proof of the effect of the alleged threat upon the addressee is highly relevant." Malik, 16 F.3d at 49.

Cothran attempts to muddy the waters by portraying Blanc's testimony as inconsistent (e.g., at one time she stated that Cothran said he was "very" upset with U.S. Air, another time she stated that Cothran said he was a "little" upset with U.S. Air). There is no need for this Court to reconcile the "inconsistencies," because they relate to witness credibility, an area peculiarly within the jury's domain. See United States v. McGlory, 968 F.2d 309, 321

(3d Cir. 1992). We are required solely to look at the trial record to determine if there is evidence sufficient for a rational juror to find Cothran guilty beyond a reasonable doubt. Here, there is more than sufficient evidence.

At the time of Cothran's phone call, Blanc had been a U.S. Air employee for twelve years, and had been in the position of taking phone calls for a decade. She testified that never in those ten years had she found a phone call as threatening as she found Cothran's. Cothran told Blanc that he was upset with U.S. Air and wanted to take explosives on the flight and blow the plane out of 35,000 feet. Blanc then pressed the emergency button to record the call. Protocol requires U.S. Air reservation sales agents when receiving a threatening call to press an emergency button that allows the call to be recorded. Blanc further testified that in her ten years of taking calls, she never previously felt the need to record a call. Blanc was upset because the situation was serious, "something not to be taken lightly." She felt that the passengers on the flight might be threatened by Cothran's comments. She further described any laughter heard on the recording as "nervous laughter," and stated that, despite Cothran's claim to be joking, she did not take his comments as a joke. Blanc's testimony is such that a rational juror could certainly have found Cothran guilty beyond a reasonable doubt. Thus, the District Court committed no error in denying his motion to acquit.

B. Analogous Sentencing Guideline

There is no specific sentencing guideline for 49 U.S.C. S 46507. Therefore, pursuant to U.S.S.G. S 2X5.1, the most analogous guideline should be applied.

The circuits are split vis-a-vis the standard of review applicable here. In United States v. Osborne, 164 F.3d 434 (8th Cir. 1999), the court provided a comprehensive and cogent analysis of the standard to be applied. The court first noted that 18 U.S.C. S 3742(e) provides the standard of review for guideline appeals.[1] Id. at 437. The court then

---

1. The relevant portion of the statute provides: "[t]he court of appeals . . . shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. S 3742(e).

looked at the background note to U.S.S.G. S 2X5.1, which "states specifically, 'The court is required to determine if there is a sufficiently analogous offense guideline and, if so, to apply the guideline that is most analogous.' " Id. (quoting U.S. SENTENCING GUIDELINES MANUAL S 2X5.1, cmt. background (1998)). The court noted that there is a two-step process involved: first, the district court must determine whether there is a sufficiently analogous offense guideline, and, if

there is, it then must determine which guideline is most analogous. Id.

The court held that the first step, determining whether there is a sufficiently analogous guideline, is a legal question and is reviewed de novo. Id. Contra United States v. Cefalu, 85 F.3d 964, 968 n.6 (2d Cir. 1996) (whether there is a most analogous offense guideline involves applying guideline to facts and receives due deference review). Because determining whether there is an analogous guideline is substantially interpreting and applying the guidelines, the Osborne court was correct and review of that first determination should be plenary.

If there is more than one sufficiently analogous offense guideline, the second step requires the district court to apply the most analogous one. Osborne, 164 F.3d at 437. The Osborne court held that this determination is more factual than legal and thus should be reviewed with due deference. Id. at 438.

The court noted that in choosing the most analogous guideline, the "district court must take into account all the circumstances of the case and make factual findings to support its choice." Id. The district court then must decide which guideline is most analogous based on the factual findings. Id. The court further stated that choosing the most analogous guideline involves more than mere interpretation, but rather "involves evaluating which of two or more legal standards is most akin to the facts." Id. The court found this to be an "application of the guidelines to the facts," and worthy of due deference pursuant to 18 U.S.C. S 3742(e). Id.; accord United States v. Rahman, 189 F.3d 88, 150 (2d Cir. 1999); United States v. Mariano, 983 F.2d 1150, 1158 (1st Cir. 1993).2 The Osborne analysis is

---

2. Courts to the contrary that apply de novo review are: United States v. Couch, 65 F.3d 542, 544 (6th Cir. 1995) (de novo review); United States v. Norman, 951 F.2d 1182, 1184 (10th Cir. 1991) (same).

logical, United States v. Calbat, 266 F.3d 358, 363 n.1 (5th Cir. 2001), and is the one we accept.

The Presentence Investigation Report in this case prepared by the probation officer recommended applying U.S.S.G. S 2K1.5 as the most analogous guideline.3 Section 2K1.5 is the guideline applicable to "Possessing Dangerous Weapons or Materials While Boarding or Aboard an Aircraft," and provides for a base offense level of 9. The District Court demurred, finding S 2A6.1 the"appropriate section to apply to [Cothran's] conduct." Section 2A6.1 is the guideline applicable to "Threatening or Harassing Communications," and provides for a base offense level of 12.

Section 2A6.1 is the more analogous guideline. First, in

contrast to S 2K1.5, it accurately embodies Cothran's conduct. Cothran was convicted of conveying a false threat, not of possessing dangerous weapons while on an aircraft. Moreover, there is a scienter element present in the base offense level for S 2A6.1 that is not present in the base offense level of S 2K1.5. That is, a defendant sentenced pursuant to the base offense level of S 2A6.1 has knowingly conveyed a threat, while a defendant sentenced pursuant to the base offense level of S 2K1.5 has not boarded the aircraft knowing that he has a dangerous weapon. If such a boarding takes place with actual knowledge of the presence of dangerous weapons, the base offense level of 9 increases 15 levels to 24. U.S. SENTENCING GUIDELINES MANUAL S 2K1.5(b)(1) (2000). To most accurately analogize Cothran's act under S 2K1.5, we would therefore have to increase his base offense level to 24 because he knowingly  conveyed the false threat. Thus, speaking strictly in terms of base offense levels, S 2A6.1 is the more analogous guideline.

Cothran cites United States v. Norman, 951 F.2d 1182 (10th Cir. 1991), as support for applying S 2K1.5. Norman involved a defendant who falsely reported that his ex-wife's suitor had boarded an aircraft with a handgun and

_____

3. At sentencing, the probation officer renounced his original position, stating, "in retrospect, I would agree with the Government that Section 2A6.1 is more analogues [sic] to the actual statute that defendant was found guilty of."

explosives. Id. at 1183. The district court had applied S 2A6.1 as the most analogous guideline during sentencing, and the appellate court reversed, ruling that it should have applied S 2K1.5. See Id. As its rationale, the court stated that "[t]he offense of threatening communications, codified in 18 U.S.C. SS 871, 876, 877, 878(a), and 879, is committed by making threats against a President, using the mail to make threats, making threats against foreign dignitaries and officials, and making threats against a former President." Id. at 1184. The court found that the defendant's conduct implicated none of those offenses and that S 2K1.5 was therefore the most analogous guideline. Id.

We reject the Norman court's analysis. Although it is true that 18 U.S.C. S 871, 876, etc. are enumerated in S 2A6.1's commentary, U.S. SENTENCING GUIDELINES MANUAL S 2A6.1, cmt. (2000), the statutory list is not exhaustive, but merely illustrative. Immediately following the list of statutes, the commentary provides, "[f]or additional [applicable] statutory provision(s), see Appendix A (Statutory Index)." Id. Appendix A provides for application of S 2A6.1 to, inter alia, violations of 18 U.S.C. S 35(b). U.S. SENTENCING GUIDELINES MANUAL, app. A (2000). Title 18 U.S.C.S 35(b) provides criminal liability if a person, "willfully and maliciously . . . imparts or conveys or causes to be imparted or conveyed false information, knowing the information to be false, concerning an attempt . . . to do any act which would be a

crime prohibited by this chapter." 18 U.S.C.S 35(b). In the same chapter as S 35(b) is 18 U.S.C. S 32, which provides criminal liability for the destruction of an aircraft. Furthermore, S 35(b)'s language closely tracks that of 49 U.S.C. S 46507, the provision under which Cothran was convicted. When we look at these sections and S 32, the statutory provisions aim at the heart of Cothran's crime: conveying false information about an attempt to destroy an aircraft. Accordingly, S 2A6.1 is the most analogous guideline applicable to Cothran's crime.

C. Guideline Reduction

Cothran argues that if S 2A6.1 is applicable, he is entitled to a four-level reduction because his "offense involved a single instance evidencing little or no deliberation." U.S.

8

SENTENCING GUIDELINES M ANUAL, S 2A6.1(b)(4) (2000). The District Court disagreed, stating that, "I do not find that it was one single episode and I find the conduct existed over the two different episodes and over a period of hours and that there was some serious deliberation and thought. . . in reference to both of these conversations and both of these activities." We review the District Court's refusal to decrease Cothran's criminal level for clear error. United States v. Green, 25 F.3d 206, 210-11 (3d Cir. 1994).

Cothran argues that his offense was a single episode and that he is thus entitled to the reduction. Assuming arguendo that the offense was a single episode, Cothran would still not ipso facto be entitled to the reduction. For the reduction to be applicable, Cothran's single episode would also have to "evidence[ ] little or no deliberation." U.S. SENTENCING GUIDELINES MANUAL, S 2A6.1(b)(4) (2000). The District Court clearly did not err in finding that Cothran seriously deliberated before acting. Federal Bureau of Investigation agent Richard Marx testified that Cothran told him that he wanted to get a reaction from a U.S. Air reservation agent, "and that he knew that a good terrorist would speak of explosives" to accomplish that goal. Such a statement demonstrates sufficient deliberation for the District Court's decision to refuse a downward departure from the guideline. The court's decision to do so was not clear error.

III.

In summary, the District Court did not err in finding the evidence sufficient to convict Cothran. Moreover, the District Court committed no error in finding U.S.S.G. S 2A6.1 to be the most analogous guideline and in denying Cothran a four-level reduction pursuant to S 2A6.1(b)(4). Accordingly, the District Court's judgment will be affirmed.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

9