

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-2-2006

# USA v. Duncan

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1173

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Duncan" (2006). *2006 Decisions.* Paper 378.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/378

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1173

———

UNITED STATES OF AMERICA

v.

MAXWELL DUNCAN,

Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cr-00735)
District Judge: Honorable Harvey Bartle, III

———

Submitted Under Third Circuit LAR 34.1(a),
September 12, 2006

Before: FUENTES, FISHER, and BRIGHT[*] Circuit Judges.

(Filed:  October 2, 2006 )

---

[*]The Honorable Myron H. Bright, Senior Judge, United States Court of Appeals for the Eight Circuit, sitting by designation.

_____

OPINION OF THE COURT
_____

FUENTES, <u>Circuit Judge</u>.

Maxwell Duncan ("Duncan") challenges his conviction as well as the constitutionality of his sentence in light of <u>United States v. Booker</u>, 543 U.S. 220 (2005). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. For the reasons stated herein, we affirm Duncan's conviction, but remand his case for resentencing in accordance with <u>Booker</u>.

**I.**

Because we write for the parties, who are familiar with the facts and procedural history of the case, we will only recite them as necessary to our discussion. During the summer of 1996, Beth Hepzibah, a religious congregation, sought to operate a day care center out of property owned by another charitable organization, Bunting Friendship Freedom House ("BFFH"), but in July 1996 the property was seized by the Internal Revenue Service ("IRS") for non-payment of taxes. Beth Hepzibah formed a corporation called Community Social Services, Inc. ("CSSI"), to acquire the BFFH property, and hired Duncan, an accountant, to negotiate an installment-payment agreement with the IRS. Duncan arranged an agreement under which CSSI would lease the property from BFFH and make monthly payments to the IRS, on behalf of BFFH, in lieu of rent. The terms of the installment agreement included a down payment and $3,500 monthly

2

payments, thereafter.

Duncan told members of Beth Hepzibah to wire transfer the monthly $3,500 payments from CSSI directly to him and that he would forward the payments to the IRS. He explained that this was the best arrangement because he needed to circumvent an IRS agent, Karen Small, who he said was hostile to CSSI's situation. From November 1996 through December 2000, CSSI wired monthly payments to Duncan's account. Duncan sent the IRS CSSI's down payment; a check for $3,500 in December 1996 that bounced; and another check for $3,500 in March 1997. He kept the rest of the payments, allegedly under a claim of right, pursuant to a fee agreement with CSSI.

Duncan was charged and convicted, in the Eastern District of Pennsylvania, of wire fraud, in violation of 18 U.S.C. § 1343. At sentencing, the District Court added upward Sentencing Guidelines adjustments because Duncan's wire fraud caused a loss exceeding $120,000, as described in U.S.S.G. § 2F1.1(b)(1)(H); involved more than minimal planning, as described in U.S.S.G. § 2F1.1(b)(2); and because Duncan abused a position of trust and used a special skill, as described in U.S.S.G. § 3B1.3. The District Court also concluded that Duncan obstructed justice. Duncan was sentenced to 37 months in prison, three years of supervised release, restitution in the amount of $94,500 and a special assessment of $2,000.

On appeal, Duncan challenges the sufficiency of the evidence put before the jury that convicted him, arguing that the Government failed to make a strong enough case for conviction, as a matter of law. Duncan also challenges each of the sentence

enhancements described above and the obstruction of justice finding, both on Booker grounds. Though the Government argues that each of the enhancements was proper, it concedes that Duncan should be resentenced because the sentencing judge believed the Guidelines to be mandatory at the time of sentencing.

## II.

Duncan contends that the prosecution's evidence at trial was insufficient to support his conviction for wire fraud. "[A] claim of insufficiency of the evidence places a very heavy burden on the appellant." United States v. Leahy, 445 F.3d 634, 657 (3d Cir. 2006) (quoting United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998)). "We must view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (citations and internal quotations omitted).

In order to prove wire fraud beyond a reasonable doubt, the government must present evidence of the following elements: (1) the defendant's knowing and willful participation in a scheme or artifice to defraud; (2) with specific intent to defraud; and (3) use of interstate wire communications in furtherance of the scheme. United States v. Antico, 275 F.3d 245, 261 (3d Cir. 2001).

Duncan' primary argument is that the government did not provide sufficient evidence to prove beyond a reasonable doubt that he had specific intent to defraud: "There may have been a gross misunderstanding here, but there was no outright deception," Duncan argues. See Appellant's Opening Brief ("App. Br.") at 11.

4

Duncan's claim is lacks merit. Among other things, the government presented testimony to prove the following:

(1) Duncan was acting as a fiduciary for CSSI. He was expected to make the IRS payments he had promised to make, and none of the wire transfers sent to Duncan for IRS payments were intended as fees.

(2) Duncan executed powers of attorney for BFFH and CSSI, in accordance with which the IRS was obligated to communicate with Duncan, not with members of CSSI or BFFH, about non-payment.

(3) CSSI paid Duncan approximately $1,500 for negotiating the IRS agreement and at some point also began to pay Duncan $500 a month; these payments were understood to be the only amounts due to Duncan for his services. The $500 wire transmittal slips to Duncan were labeled "partial accounting fee payment," and the funds were sent to a different bank account than the one Duncan used for the IRS payments.

(4) Duncan concealed his non-payment to the IRS by contacting the Taxpayer's Advocate on behalf of BFFH, a procedure that Duncan knew would require the IRS to cease any collection action in progress until the dispute was resolved.

(5) Duncan told IRS agent Small that BFFH was not making any tax payments because CSSI did not have access to the property and was not generating any income.

(6) Duncan told the IRS that he was not making payments on behalf of CSSI and BFFH because he had been deducting fees from their payments, pursuant to an agreement he had with the organizations; an agreement that he was never able to produce to the IRS.

5

(7) Duncan told CSSI members that the IRS probably lost track of payments he had sent because he had sent them to the west coast, not the east coast IRS office.

(8) In 2000, Duncan falsely told CSSI members that the IRS had increased the total amount due from BFFH to $250,000 as a result of penalties and interest.

In response to the government's case, Duncan produced, at trial, copies of two documents that he alleged included his fee agreements with CSSI and BFFH. The authenticity of the agreement that covers Duncan's initial $1,500 fee was uncontested. However, the authenticity of the second document that purportedly entitled Duncan to keep CSSI's $3,500 monthly payments was challenged by a witness from CSSI who testified that the "signature" on the document was not his. The government used an overlay to demonstrate that the signature page on the fabricated agreement was a duplicate of the one from the authentic agreement. Duncan's Opening Brief also cites testimony that he presented to prove the existence of a fee agreement, but none of these witnesses suggest that the alleged agreement entitled Duncan to all of CSSI's tax payments.

In this case, the government presented the jury with more than enough evidence to prove all of the elements of fraud beyond a reasonable doubt. Duncan offered testimony of individuals who said they were aware of Duncan's professional services contract with CSSI, but to the extent that these witnesses contradict the government's case, a rational juror had ample reason to find them not credible. It is not the role of this Court "to weigh the evidence or to determine the credibility of witnesses." United States v. Cartwright,

6

359 F.3d 281, 286 (3d Cir. 2004) (quoting <u>United States v. Cothran</u>, 286 F.3d 173, 175 (3d Cir. 2002)). Instead, this Court "must view the evidence in the light most favorable to the government and sustain the verdict if any rational juror could have found the elements of the crime beyond a reasonable doubt." <u>Id.</u> We will affirm Duncan's conviction.

**III.**

Duncan appeals his sentence of 37 months. The Supreme Court in <u>United States v. Booker</u>, 543 U.S. 220 (2005), held that the then-prevailing sentence scheme which mandated that sentencing judges apply the Sentencing Guidelines was unconstitutional. It is undisputed that the District Court, in sentencing Duncan five days before the <u>Booker</u> decision, treated the Sentencing Guidelines as mandatory rather than advisory. Duncan is therefore entitled to resentencing. <u>United States v. Davis</u>, 407 F.3d 162, 165 (3d Cir. 2005) (en banc).

This Court has determined that the sentencing enhancement issues Duncan raises are best determined by the District Court in the first instance. <u>United States v. Davis</u>, 397 F.3d 173, 183 (3d Cir. 2005); <u>see also</u> <u>United States v. Ordaz</u>, 398 F.3d 236, 239 (3d Cir. 2005). Accordingly, we will vacate Duncan's sentence and remand this matter for resentencing consistent with <u>Booker</u>. <u>See generally</u> <u>United States v. Cooper</u>, 437 F.3d 324 (3d Cir. 2006) (discussing standards for post- <u>Booker</u> sentencing).

**IV. Conclusion**

We will affirm the judgment of conviction, vacate the judgment of sentence, and remand this case for resentencing under <u>Booker</u>.

7
