

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-26-2006

# USA v. Askew

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1884

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Askew" (2006). *2006 Decisions.* Paper 296.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/296

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 05-1884

UNITED STATES OF AMERICA

v.

MAURICE ASKEW,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(Crim. No. 04-39)
District Judge: Hon. Arthur J. Schwab

Submitted pursuant to Third Circuit LAR 34.1(a)
October 3, 2006

Before: McKEE and AMBRO, *Circuit Judges*,
and NYGAARD, *Senior Circuit Judge*

(Opinion filed: October 26, 2006 )

OPINION

McKEE, *Circuit Judge*.

Maurice Askew appeals from the district court's judgment of conviction and

sentence. For the reasons that follow, we will affirm.

**I. DISCUSSION.[1]**

_____

[1] Since we are writing primarily for the parties who are familiar with this case, we
(continued...)

We consider each of Askew's three arguments separately.

## A. District Court Abused its Discretion When it Precluded Askew from Impeaching a Government Witness.

Xondra Nolden, a government witness, testified that Askew told her that he had gone to Johnstown to rob a bank, and that he had robbed a bank there. Askew argues that he should have been allowed to impeach Nolden with an alleged prior inconsistent statement she made to his prior attorney. At trial, Askew's counsel offered the following proffer.

> Mr. Chontos would testify that in January of 2004, he interviewed Xondra Nolden by telephone. . . in preparation for the detention hearing, and that Ms. Nolden told him concerning the statement that she allegedly made to the authorities that . . . she did not say, quote, Askew told me he did a robbery in Johnstown, close quote [and] she did not say, I saw him with a lot of money. . . . So I think the heart of the proffer would be that . . . she did not say . . . that Askew told me he did a robbery in Johnstown.

App. 227-28. The district court found that the proffered testimony was inadmissible hearsay pursuant to Fed.R.Evid. 801(d)(1)(A)[2] because the prior statement was not made

---

[1](...continued)
need state the factual or procedural background of this appeal except insofar as is helpful to our brief discussion.

[2]Fed.R.Evid. 801(d)(1)(A) provides that "[a] statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with his testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . ." "Since prior inconsistent statements that come within this Rule are defined as not being hearsay, they may be admitted as substantive evidence for the truth of the matter asserted, and not merely for impeachment purposes." *United States v. DiCaro*, 772 F.2d 1314, 1321 (7th Cir. 1985) (citation omitted).

under oath.

Askew does not challenge that ruling. Rather, he contends that the proffered testimony was admissible under Fed.R.Evid. 613(b). That Rule provides, in relevant part:

> **(b) Extrinsic evidence of prior inconsistent statement of witness.**
> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

Fed.R.Evid. 613(b). However, he offers no argument to support this contention and he does not tell us why the proffered testimony would be admissible under Rule 613(b). In any event, we find this argument without merit.

Under Rule 613(b), extrinsic evidence of a prior inconsistent statement is sometimes admissible to impeach a witness's testimony. *See United States v. Mitchell*, 113 F.3d 1528, 1532 (10th Cir. 1997). "The rule applies 'when two statements, one made at trial and one made previously, are irreconcilably at odds.'" *United States v. Meserve*, 271 F.3d 314, 320 (1st Cir. 2000) (quoting *United States v. Winchenbach*, 197 F.3d 548, 558 (1st Cir. 1999). However, here, the proffered testimony was not "irreconcilably at odds" with Nolden's trial testimony. The fact that Nolden may have told Chontos that she did not tell the FBI that Askew robbed the bank is not inherently inconsistent with her trial testimony that Askew did tell her that he robbed the bank. The proffer concerned what Nolden told the FBI, not what Askew actually told her.

3

Obviously, Chontos could not have testified about whether Askew told Nolden he had robbed a bank. Therefore, Nolden's trial testimony was not inconsistent with the statements to Chontos.[3]

## B. Insufficiency of the evidence.[4]

Askew argues that the evidence was insufficient to support his convictions for bank robbery, armed bank robbery and using and carrying a firearm during a crime of violence because the government's case was circumstantial. Askew rests this argument upon the fact that Nolden's testimony was the only direct evidence of his guilt, and he claims her testimony was internally inconsistent and confusing. However, despite Askew's claims to the contrary, evidence of his guilt was substantial, and it clearly was sufficient to support the guilty verdict.

Nolden testified that, on the day of the robbery, Askew told her that he "had gone to Johnstown to get some money and that he had robbed a bank." App. 125. The jury also heard the following exchange:

---

[3]The district court did not use this analysis in excluding the proffered testimony. However, an evidentiary ruling can be affirmed on a ground different than that used by the district court. *See United States v. Young*, 248 F.3d 260, 268 n.4 (4th Cir. 2001).

[4]"The standard of review is particularly deferential when deciding whether a jury verdict is based on legally sufficient evidence." *United States v. Cothran*, 286 F.3d 173, 175 (3d Cir. 2002) (citation and internal quotations omitted). "It is not our role to weigh the evidence or to determine the credibility of the witnesses." *Id.* (citation omitted). "We must view the evidence in the light most favorable to the Government and sustain the verdict if any rational juror could have found the elements of the crime beyond a reasonable doubt." *Id.* (citation omitted). "The appellant carries a very heavy burden on appeal." *Id.* (citation omitted).

4

Q: [D]id there ever come a time when . . . Maurice asked you to hide money in your place or told you that he was already hiding money in your place?

A: He told me he already had the money in after I was there.

****

Q: What information did you have that made you think . . . that the money came from a bank robbery?

A: Because it was stated by him.

Q: It was stated by who?

A: Maurice.

Q: By Maurice. To you?

A: Yes

App. 117.

Nolden also testified that Askew gave her money after the robbery, and that she knew the money was from the robbery because he said "he robbed it, so I figured that's where [the money] came from." App. 118.

The following evidence was also offered: ten days after the robbery, a safe belonging to Askew containing $36,235.00 in cash was confiscated, and the money inside it included one of the bait bills stolen during the bank robbery; days after the robbery Askew, who was unemployed, spent thousands of dollars getting his car repaired and buying a motorcycle; a gun was recovered during Askew's arrest that was consistent with one of the firearms used in the bank robbery; and Askew owned clothing that was

5

similar to the clothing of one of the robbers, including boots and a purple backpack. In addition, his shoe size was consistent with that of the robber who jumped over the counters during the robberies. Therefore, there was clearly enough evidence to support Askew's conviction, and his argument to the contrary is absolutely frivolous.

## C. Sentencing.

Askew argues that the district court, in imposing his sentence, "simply adopted the calculations of the presentence report and the sentencing range recommended therein and sentenced the defendant within that range," and, therefore, deviated from the standards set forth in *United States v. Booker*, 125 S.Ct. 738 (2005).[5] We assume that he is arguing that the district court thought the guidelines were mandatory.[6] We disagree.

The district court expressly noted that, post-*Booker*, the guideline range was only advisory. App. 30. The district court also specifically stated that it had considered "all of the factors set forth in 18 U.S.C. § 3553(a)" when imposing Askew's sentence. *Id.* More

___

[5]In *United States v. Booker*, 125 S.Ct. 738 (2005), the Supreme Court held that the federal sentencing guidelines are advisory. 125 S.Ct. at 764-65. After *Booker*, "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id.* at 767. As before *Booker*, district courts must impose sentences that promote the "sentencing goals" listed in 18 U.S.C. § 3553(a). *Id.* at 764-65.

[6]Askew did not object to his sentence in the district court. Therefore, his claim in regard to his sentence is reviewed for plain error. *United States v. Davis*, 407 F.3d 162, 164-65 (3d Cir. 2005)(en banc). Accordingly, there must be (1) error, (2) that is plain, (3) that affects substantial rights. *United States v. Cotton*, 535 U.S. 625, 631 (2002). If all three conditions are met, an appellate court may exercise its discretion to notice a forfeited error if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 631-32.

specifically, the district court found that Askew "presented extreme danger to the community, and it [was] only for [his] good fortune that [his] series of bank robberies did not result in the loss of innocent life or, for that matter, [his] own life." *Id.* The district court also noted that it considered the "sentence appropriate to address the sentencing objective of the Sentencing Reform Act of 1984, including punishment, rehabilitation, deterrence." *Id.* Finally, the district court noted that the sentence was "in large part dictated by the mandatory minimum sentence required . . . for [Askew's] conviction of brandishing a firearm during the commission of armed bank robbery." *Id.* Accordingly, there was no sentencing error.

## II. CONCLUSION

For all of the above reasons, we will affirm the district court's judgment of sentence and conviction.

7