

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2007

# USA v. Rivas-Pellerano

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3740

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Rivas-Pellerano" (2007). *2007 Decisions.* Paper 1112.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1112

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 06-3740

———


UNITED STATES OF AMERICA

v.

LUIS FELIPE RIVAS-PELLERANO,
                                    Appellant

———


On Appeal from the District Court of the Virgin Islands
(D.C. No. 04-cr-00171)
District Judge: Hon. Raymond L. Finch

———

Submitted Under Third Circuit LAR 34.1(a)
May 7, 2007

Before: SLOVITER, STAPLETON, and VAN ANTWERPEN, Circuit Judges

(Filed:   May 11, 2007)

———

OPINION

———

SLOVITER, Circuit Judge.

Appellant Luis Felipe Rivas Pellerano appeals a conviction for attempted reentry of removed alien in violation of 8 U.S.C. § 1326(a) and (b), arguing that the evidence was insufficient to support the conviction. We affirm the jury verdict.

I.

On November 8, 2004, the U.S. Coast Guard Cutter Cushing intercepted a 28-foot sailboat, the Njord, off the coast of St. Croix, U.S. Virgin Islands. Appellant Luis Felipe Rivas Pellerano ("Pellerano"), was on board the Njord, which was traveling from Dominica, West Indies. According to the testimony of crew member Crawford Sabaroche, the boat had been caught in a storm during the trip, causing torn sails, loss of power, and intake of water. Although Coast Guard Lieutenant Terrance Wallace testified that there was no storm at the time the Coast Guard intercepted the Njord and that the Njord did not appear to be in distress, Pellerano states that the boat and its passengers were in distress until intercepted by the Coast Guard. Wallace testified that while the Coast Guard Cutter Cushing was in pursuit of the Njord, the sailboat was "maneuvering erratically trying to evade [the Coast Guard]." App. 202. According to Coast Guard officer David Lepley, the Coast Guard was not welcomed aboard the Njord, but in response to their direction, Pellerano and Anthony Ackie, another crew member, produced their passports and Sabaroche produced his birth certificate.

In their search of the ship, the Coast Guard officers found approximately twenty Haitians below, and were told by at least some that they had paid to be transported to St.

2

Thomas or St. Croix. The passengers were in Coast Guard custody from November 8, 2004, until November 10, 2004, when they were placed into the custody of the Immigration and Customs Enforcement ("ICE"). Based on interviews with the Coast Guard and the passengers, ICE concluded that Pellerano was a crew member, not a passenger. A five-count indictment was filed December 14, 2004, in the District Court of the Virgin Islands, Division of St. Croix, naming Pellerano, along with Sabaroche and Ackie, both nationals of the Commonwealth of Dominica, West Indies.[1] The indictment charged, inter alia, that Pellerano was a national of Santo Domingo and, along with Sabaroche and Ackie, had devised a scheme to smuggle aliens into the United States via St. Croix, Virgin Islands, for financial gain.

Of the five counts contained in the indictment, Counts 1, 2, 3, and 5 applied to Pellerano. Count 1 was dismissed on the motion of the United States. Pellerano's motion for Judgment of Acquittal on Count 2 was granted, and the jury found Pellerano not guilty on Count 3. The jury found Pellerano guilty on Count 5, which charged Pellerano with attempted illegal reentry by a previously deported alien in violation of 8 U.S.C. § 1326(a) and (b). Pellerano was sentenced to 50 months' imprisonment with credit for time served, which, at the time of sentencing, was nearly 21 months.

II.

---

[1] The indictment charged Pellerano with conspiracy to bring in illegal aliens; bringing in illegal aliens for financial gain; bringing in illegal aliens; and reentry of removed alien.

3

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.  The appellant carries a very heavy burden on appeal.  United States v. Cothran, 286 F.3d 173, 175 (3d Cir. 2002). In deciding whether a jury verdict is based on legally sufficient evidence, this Court is particularly deferential and will not weigh the evidence or determine the credibility of the witnesses.  Id. (citing United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998)).  This Court must view the evidence in the light most favorable to the government, and sustain the verdict if any rational juror could have found the elements of the crime beyond a reasonable doubt.  Cothran, 286 F.3d at 175.

Pellerano argues that there was insufficient evidence to support his conviction on Count 5.  Under § 1326(a), any alien who

> (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>
> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a).

Pellerano does not dispute that he previously was removed from the United States; he argues only that the government presented insufficient evidence that he had effected an "entry" into the United States.  He cites United States v. Cardenas-Alvarez, 987 F.2d

1129 (5th Cir. 1993), for his proposition that "[a]n attempt to enter violates the statute only if the attempt is made through fraudulent, evasive or surreptitious means." Appellant's Br. at 24-25.

The courts of appeals are divided as to whether attempted reentry is a specific-intent or general-intent offense. It is not necessary for this court to address the issue here, because there was sufficient evidence presented at trial for the jury to conclude that Pellerano knowingly intended to reenter the United States, which would satisfy both the specific intent test or the general intent test.

Any of three events trigger § 1326(a): entry, attempted entry, or being found in the United States. Pellerano's interpretation of the statute, that an alien must effect an entry into the United States in order to be charged with attempted reentry, would render the "attempted entry" trigger event redundant. The Supreme Court has recently suggested that attempted reentry requires only "an overt act qualifying as a substantial step" toward entry. United States v. Resendiz-Ponce, __ U.S. __, 127 S.Ct. 782, 787 (2007) (holding that "an indictment alleging attempted reentry under § 1326(a) need not specifically allege a particular overt act").

Pellerano does not dispute the jury's findings that he was an alien who had previously been deported and that he did not have prior express consent of the Attorney General to reenter the United States. At issue here is whether the record contains sufficient evidence to support a finding of attempted reentry. We conclude that it does. Several passengers who were on board the Njord with Pellerano testified that the boat was

traveling from Dominica to St. Thomas and/or St. Croix, and that they had paid money to be transported to the Virgin Islands. The passengers further testified that Pellerano and the crew had told the passengers to tell the Coast Guard, if asked, that the boat was going to Guadeloupe. Based on this testimony and the testimony of Coast Guard Lt. Wallace, who stated that the Njord was "6.7 nautical miles southeast of the east point of St. Croix, inside the contiguous zone" and within sight of St. Croix at the time of the interception, the jury reasonably could have found that the Njord was on its way to St. Thomas or St. Croix.

Moreover, one of the passengers, Christian Polanco, testified that during two separate conversations on board the Njord, Pellerano said he was planning to visit his sister in St. John. The jury reasonably could have concluded that it was Pellerano's intention to travel to St. John once the Njord arrived on St. Thomas, and that his presence on board the Njord - whether as a passenger or a crew member - was a "substantial step" toward his goal of entering the United States.

Viewing the evidence in the light most favorable to the government, we determine that the jury reasonably could have concluded that Pellerano had attempted to reenter the United States without prior consent of the Attorney General. Therefore, we affirm the District Court's judgment and sentence.

### III.

Pellerano's second argument, that the judgment should be amended to reflect the 50-month sentence imposed orally by the district judge, is moot. Although the original

6

judgment, entered August 7, 2006, did indicate that Pellerano's prison term was to be 55 months, rather than the 50 months imposed at the oral sentencing, the judgment was amended on November 13, 2006 and again on March 14, 2007. As the amended judgment now reflects the correct sentence of 50 months, we need not address this issue.

## IV.

We will affirm the District Court's judgment and sentence as reflected in the Amended Judgment entered March 14, 2007.

_____