NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-2708

UNITED STATES OF AMERICA

v.

JOHN FELDER,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 06-cr-00079-001
(Honorable Gene E.K. Pratter)

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 19, 2010

Before: SCIRICA, AMBRO and ALARCÓN[*], *Circuit Judges*.

Filed: August 6, 2010

OPINION OF THE COURT

SCIRICA, *Circuit Judge*.

---

[*]The Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Judicial
Circuit, sitting by designation.

On February 4, 2008, John Felder was convicted by a jury of six counts (Counts 4, 6, and 8–10) of distribution of and possession with intent to distribute cocaine base ("crack cocaine"), three counts (Counts 5, 7, and 13) of distribution of and possession with intent to distribute marijuana, one count (Count 12) of possession with intent to distribute to distribute crack cocaine, one count (Count 14) of possession with intent to distribute heroin, and two counts (Counts 17 and 18) of possession of a firearm in furtherance of a drug trafficking crime.[1] The District Court sentenced Felder to 264 months' incarceration, eight years of supervised release, a $1,100 fine, and a special assessment of $1,100. Felder timely appeals both the conviction and the sentence.

Felder challenges his convictions, contending (1) the evidence was insufficient to support the convictions beyond a reasonable doubt; (2) the court erred in denying his motion to dismiss the indictment pursuant to Rule 5(a) of the Federal Rules of Criminal

---

[1]On February 23, 2006, a grand jury in the Eastern District of Pennsylvania returned an indictment against John Felder, charging him with six counts of distribution of crack cocaine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C), and 18 U.S.C. § 2 (Counts 4, 6, and 8–11); two counts of distribution of marijuana and aiding and abetting, in violation of 21 U.S.C. § 2 (Counts 5 and 7); one count of possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count 12); one count of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Count 13); one count of possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count 14); two counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Counts 17 and 18); and two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Counts 19 and 20). Because the jury did not reach a unanimous verdict as to Counts 11, 19, and 20, the District Court declared a mistrial as to those counts.

2

Procedure; (3) the court erred in denying his counsel's motion to withdraw; and (4) the jury's verdicts convicting him were internally inconsistent and the product of jury confusion. Felder further contends the District Court erred in imposing an unreasonable sentence by failing to give meaningful consideration to the factors set forth in 18 U.S.C. § 3553(a). We will affirm.[2]

## I.

Responding to a complaint of illegal drug sales occurring at the corner of 7th and Market Streets in Philadelphia, narcotics officers of the Philadelphia Police Department began an investigation in April 2005 of Gregory Long and Felder.[3] On the 900 block of 4th Street, Officer Kenneth Oglesby testified that, while operating in an undercover capacity, he used pre-recorded "buy money" to make controlled purchases of narcotics from Long. Long testified that by May 13, 2005 he had introduced Oglesby to Felder. According to Oglesby's testimony, Felder sold the undercover officer varying amounts of cocaine and marijuana at Felder's residence located at 1741 Sigel Street in Philadelphia between May 13, 2005 and June 10, 2005.

As Oglesby requested more cocaine from Felder, Oglesby learned of Theartis Haynes, Felder's supply source. Oglesby testified that on June 1, 2005 and June 10, 2005

---

[2]The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[3]Gregory Long and Theartis Haynes, both co-defendants of Felder, testified against him. Both Long and Haynes acknowledged at trial that they had entered into a cooperative guilty plea agreement with the Government.

he was told by Felder to wait inside Felder's home until Haynes arrived with a large delivery of crack cocaine. Ogelsby testified that he observed Haynes enter Felder's home and deliver the crack cocaine to Felder, who then sold some of the crack cocaine and marijuana to the undercover officer. At trial, Haynes testified that he had made deliveries of crack cocaine to Felder's residence. Ogelsby also testified that he purchased a .25 caliber pistol from Felder for $450 in pre-recorded buy money on June 10, 2005.

After Haynes left Felder's residence on June 10, 2005, Haynes was followed and arrested at his residence at 2215 Moore Street in Philadelphia. Officers found $2,400 of the pre-recorded buy money that Oglesby had given to Felder that day. Concurrently, Officer Cujdik of the Field Narcotics Unit obtained a search warrant for Felder's residence. At the time the search warrant was executed on June 10, 2005, Felder was the only one at his home. The officers found Felder sitting on the bed along with a plate used to cut and package cocaine, and $1,100 in pre-recorded "buy money."[4] Officers also recovered a variety of drug paraphernalia, approximately $6,602, roughly one kilogram of marijuana, and 6.5 grams of heroin packaged for distribution. Additionally, officers found a fully loaded Glock, Model 17, nine millimeter semi-automatic pistol, and a fully loaded Colt, Model "Official Police," .38 caliber revolver concealed under the bed. Both firearms had obliterated serial numbers. At the time of the search, police found an

---

[4]Oglesby had provided the remainder of the "buy money" to Felder earlier the same day.

additional six grams of crack cocaine and other evidence throughout Felder's home.

## II.

When reviewing a challenge to the sufficiency of evidence, we view the evidence in the light most favorable to the government, and will sustain the verdict "if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999). To determine whether there was sufficient evidence to uphold the convictions, we examine the "totality of the evidence, both direct and circumstantial." *United States v. Sparrow*, 371 F.3d 851, 852 (3d Cir. 2004) (internal quotation marks and citation omitted). The standard is deferential and it is not our role to weigh the evidence or determine the credibility of the witnesses. *United States v. Jones*, 566 F.3d 353, 361 (3d Cir. 2009); *United States v. Cothran*, 286 F.3d 173, 175 (3d Cir. 2002). Thus, "a claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (internal quotation marks and citation omitted).

The evidence against Felder consisted of testimony by the arresting officer, testimony by cooperating co-defendants Long and Haynes, and circumstantial evidence linking both the drugs and the guns found in Felder's home to Felder. Felder's challenge is three-fold: (1) the government witnesses' testimony was incredible; (2) the evidence was insufficient to establish that Felder constructively possessed the drugs and firearms;

and (3) the evidence was insufficient to prove that he knowingly possessed firearms in furtherance of a drug trafficking crime.[5]  These assertions lack sufficient merit.

A.

Felder contends the testimony of Officer Oglesby was insufficient to support the convictions because the testimony was inconsistent with his report.  Felder asserts that on cross examination "Oglesby acknowledged that it was possible he made some unintentional errors in his testimony about important facts of the case."  Alleged inconsistencies pertain to witness credibility, "an area peculiarly within the jury's domain."  *Cothran*, 286 F.3d at 176.  During trial, Oglesby referred to his investigative report and used the report to refresh his recollection as to the details surrounding the case.[6]  Oglesby's testimony was not so inconsistent that it could not be believed by a rational juror.  We conclude the evidence was more than sufficient to support Felder's conviction.

Felder also contends the testimony of Long and Haynes, who stood to benefit by their cooperation, was insufficient to support his conviction.  "The mere fact that a

[5]Counts 12–14 require proof that the defendant knowingly possessed the drugs at issue.  *See* 21 U.S.C. § 841(a)(1).  Under Counts 17–20, the government must prove that the defendant knowingly possessed the firearms at issue.  *See* 18 U.S.C. §§ 922(g)(1), 924.

[6]*See United States v. Weinberg*, 478 F.2d 1351, 1355 (3d Cir. 1973) (holding the district court did not abuse its discretion in permitting a law enforcement agent to examine his summary report to refresh his recollection and that the report was referred to by the agent solely for that purpose.)

witness hopes to receive a reduced sentence by testifying for the prosecution does not disqualify him." *United States v. DeLarosa*, 450 F.2d 1057, 1060 (3d Cir. 1971) (internal quotation marks and citation omitted). We have held that "uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction." *DeLarosa*, 450 F.2d 1057, 1060 (3d Cir. 1971). Both Long and Haynes testified that they had been present when Officer Oglesby conducted drug transactions with Felder. Felder's contentions are unpersusaive.

B.

On Counts 4–10, Felder contends there was insufficient evidence to establish he constructively possessed the drugs. There is constructive possession if an individual "knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." *United States v. Garth*, 188 F.3d 99, 112 (3d Cir. 1999) (emphasis omitted).

Felder contends there was insufficient evidence that he had knowledge of the drugs and firearms. He testified the drugs were in his home without his knowledge, and the two firearms belonged to his uncle. But it is for the jury to determine the credibility of the witnesses, including the defendant.[7] Notwithstanding Felder's own testimony, there was substantial evidence that he knowingly possessed the drugs and firearms. He

---

[7] *See United States v. Urban*, 404 F.3d 754, 782 (3d Cir. 2005) ("[T]here is no question that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt.") (internal quotation marks and citation omitted).

does not dispute that 1741 Sigel Street was his residence, and that at the time of the search he was the only person at the home. The officers found Felder in his bedroom where the crack cocaine, marijuana, heroin, and two firearms were recovered. On the bed, officers recovered a plate used to cut crack cocaine and $1,100 in pre-recorded buy money. Oglesby testified to seeing and hearing Felder go into the bedroom during undercover sales transactions. Moreover, during the course of the investigation, officers observed crack cocaine and marijuana transactions at the residence between Felder and the undercover officers. The evidence was more than sufficient for a jury to conclude that Felder knowingly possessed the drugs and firearms.

On Counts 12–14 Felder also contends there was insufficient evidence that he knowingly possessed drugs with intent to distribute. Based on the investigation, there was overwhelming evidence to show Felder had knowledge of the drugs and was engaged in drug trafficking activities. Thus, there was sufficient evidence for a rational jury to conclude that Felder had possession with the intent to distribute the drugs.

C.

Felder asserts there was insufficient evidence to show he possessed the firearms in furtherance of a drug trafficking crime. Section 924(c) requires evidence specific to the particular defendant, showing that his "possession actually furthered the drug trafficking offense." *Sparrow*, 371 F.3d at 853 (citation omitted). "In making this determination the following nonexclusive factors are relevant: the type of drug activity that is being

9

conducted, accessibility of the firearms, the type of the weapon, whether the firearm is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* Police officers found two firearms concealed under the bed in close proximity to the drugs, drug paraphernalia, and pre-marked bills used in connection with drug trafficking activity. Both firearms were fully loaded with obliterated serial numbers, and Felder could not have possessed the firearms legally, as he had a prior felony conviction. *See* 18 U.S.C. § 922(g)(1). There was sufficient evidence to conclude Felder possessed the firearms in furtherance of Felder's drug activities.

## III.

Felder contends the District Court erred in denying his pretrial motion to dismiss the indictment based on the government's alleged violation of Federal Criminal Rule of Procedure 5(a)(1)(A). We disagree. Rule 5(a)(1)(A) states that "a person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . ." Fed. R. App. P. 5(a)(1)(A). Felder argues the detainer placed on him while in state custody constituted an "arrest" sufficient to implicate Rule 5(a)(1)(A). The federal detainer lodged on Felder while in state custody, however, did not act as an "arrest." A detainer is an unexecuted warrant placed on an individual while in custody in another jurisdiction and is a matter of comity. *Moody v. Daggett*, 429 U.S. 78, 81 n.2

10

(1976).[8]  Felder was arrested by the Philadelphia Police Department on state narcotics and firearms charges on June 10, 2005.  On January 20, 2006 the federal government filed a criminal complaint against him while he was housed at a state correctional facility awaiting a state parole violation hearing.  Subsequently, the District Court timely issued a writ for Felder's appearance.   Therefore there was no violation of Rule 5(a)(1)(A).[9]

IV.

Felder contends the District Court erred in denying his counsel's motion to withdraw from representation, citing Pennsylvania Rule of Professional Conduct 1.16.[10] Specifically, Felder contends the court should have allowed his counsel, who had reason to believe Felder was prepared to commit perjury, to withdraw from representation.[11]

---

[8]The Supreme Court in *Moody* further defined a detainer as an "internal administrative mechanism to assure that an inmate subject to an unexpired term of confinement will not be released from custody until the jurisdiction asserting a . . . violation has had an opportunity to act in this case . . . ."  429 U.S. 78, 81 n.2 (1976).

[9]Citing to *United States v. Alvarez-Sanchez*, Felder asserts a detainer should be classified as "other detention" sufficient to trigger the protections of Rule 5(a)(1)(A).  *See* 511 U.S. 350, 358 (1994) (noting that when an individual is held on a federal charge, there is a duty, obligation, or reason to bring him before a federal magistrate judge).  But Felder does not allege he was in state custody for the sole purpose of facing federal charges.  We agree with the government's assertion that the federal "detainer" did not convert Felder's state incarceration into a period of federal detention.

[10]We review for abuse of discretion.  *Ohntrup v. Firearems Ctr. Inc.*, 802 F.2d 676, 679 (3d Cir. 1986); *United States v. Goldberg*, 67 F.3d 1092, 1097 (3d Cir. 1995).

[11]Rule 1.16 provides "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the representation

(continued...)

11

This assertion lacks merit. The District Court held an ex parte hearing on the motion, conducted a thorough inquiry, and determined that defense counsel could proceed without committing any ethical violation.[12] Furthermore, the District Court determined that allowing counsel to withdraw, four days into trial, would produce an inordinate delay.[13] We see no abuse of discretion.

V.

Felder contends the convictions were internally inconsistent and the product of jury confusion. He asserts that the jury's inability to reach a verdict on Count 11 was internally inconsistent with its guilty verdicts on Counts 4–10.[14] He cites to *United States*

---

[11](...continued)
will result in a violation of the Rules of Professional Conduct or other law . . . ." Pa. R. Prof. Conduct 1.16. Felder's contention pertains to a violation of Pennsylvania Rule of Professional Conduct 3.3, which provides, "a lawyer shall not knowingly . . . offer evidence that the lawyer knows to be false." Pa. R. Prof. Conduct 3.3.

[12]Defense counsel was instructed by the court to present Felder's testimony in narrative form and was instructed to make no reference to statements that could be false in closing argument. *See* Pa. R. Prof. Conduct 3.3, comments 6–7 ("If only a portion of a witness' testimony will be false, the lawyer may call the witness to testify but may not elicit or otherwise permit the witness to present the testimony that the lawyer knows is false. . . . [C]ourts have required counsel to present the accused as a witness or to give a narrative statement if the accused so desires, even if counsel knows that the testimony or statement will be false."); *see also* ABA Model R. Prof. Conduct 3.3, comments 6–7.

[13]At the time of defense counsel's motion to withdraw, the jury had heard opening statements, testimony from 13 government witnesses, and the court had admitted and published over 50 exhibits to the jury.

[14]Counts 4–10 charged Felder with distribution of and possession with intent to distribute crack cocaine and marijuana prior to June 10, 2005. Count 11 charged Felder
(continued...)

*v. Messerlian* for the proposition that an inconsistent verdict may necessitate a new trial if there is insufficient evidence to support the jury's findings. 832 F.2d 778, 797 (3d. Cir. 1987). But *Messerlian* is unavailing here because there was sufficient evidence to convict Felder. Inconsistent verdicts do not necessarily show that the jury was not convinced of the defendant's guilt.[15] *See United States v. Powell*, 469 U.S. 57, 64–65 (1984). With ample evidence to support the convictions, Felder's assertion fails.

## VI.

In challenging his sentence, Felder contends the District Court abused its discretion and applied an unreasonable sentence.[16] Under the sentencing guidelines, the court applied an offense level of 37 and criminal history category of VI because of Felder's four prior felony convictions. The guideline range was 360 months to life imprisonment. The District Court sentenced Felder to 264 months' incarceration. *See* 18

---

[14](...continued)
with his final sale of crack cocaine to Oglesby on June 10, 2005.

[15]Criminal defendants are afforded a protection against jury error by the independent review of the sufficiency of the evidence on appeal. *See Powell*, 469 U.S. at 67 (1984) ("This review should not be confused with the problems caused by inconsistent verdicts. Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt."). *See also Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000) ("Inconsistent jury verdicts . . . should not, in and of themselves, be used to overturn otherwise valid verdicts.").

[16]We review sentences for reasonableness under an abuse of discretion standard. *United States v. Booker*, 543 U.S. 220, 261 (2005); *Gall v. United States*, 552 U.S. 38, 49 (2007).

U.S.C. § 3553(a). Despite the 96-month downward departure, Felder asserts the sentence is unreasonable because the District Court failed to meaningfully consider all the relevant § 3553(a) sentencing factors. The District Court properly considered the factors, including Felder's family situation and his educational, medical, and vocational concerns. It balanced them with the seriousness of the offenses, Felder's criminal history, his lack of remorse, and the concern for public safety. We discern no abuse of discretion, and have no reason to find the sentence unreasonable.

## VII.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.