**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 16-2778

———————

UNITED STATES OF AMERICA,

v.

RICHARD BUSH,

Appellant

———————

No. 16-3360

———————

UNITED STATES OF AMERICA,

v.

MAYANK MISHRA,

Appellant

———————

On Appeal from the United States District Court for the
Western District of Pennsylvania
(D.C. No. 2-12-cr-00092-001, 2-12-cr-00092-002)
District Judge:  Hon. Cathy Bissoon

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 12, 2018

Before:  CHAGARES, VANASKIE, Circuit Judges, and BOLTON, District Judge.*

(Opinion Filed:  July 6, 2018)

_____

OPINION*

_____

CHAGARES, Circuit Judge.

Richard Bush and Mayank Mishra appeal from their convictions after a joint jury trial arising out of their participation in a conspiracy to sell heroin.  Mishra also appeals from his sentence.  Bush was convicted of conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 849; possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); possession of a firearm by a convicted felon, in violation of 18 U.S.C. 922(g); and possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d).  He was sentenced to 300 months of imprisonment.  Mishra was convicted of conspiracy to distribute heroin in violation of 21 U.S.C. § 846, and sentenced to 151 months of imprisonment.  They each raise numerous challenges.  As explained below, we find their arguments without merit, and so we will affirm.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition.  Through undercover agents and wiretaps, investigators determined that Bush

_____

* The Honorable Susan R. Bolton, Senior United States District Judge for the District of Arizona, sitting by designation.
* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

was a drug maker who was part of a larger heroin distribution network of gang members in Pittsburgh. Bush procured his drug-making material (other than the heroin itself) from Mishra. Mishra owned Rock America, a store that ostensibly sold concert "swag," but whose real profit came from the sale of stamp bags, diluents (cutting agents), and other drug paraphernalia to Pittsburgh drug dealers. Mishra did not display or advertise these stamp bags or diluents in his store, but instead kept them behind the counter, in a back room, or at home. Bush placed monthly bulk orders for diluents and cases of distinctively marked and colored stamp bags with Mishra. Investigators intercepted calls between Bush and Mishra, in which they discussed Bush's heroin recipe. Mishra would extend Bush credit when he was short on cash, and permitted Bush to return unused stamp bags in exchange for other stamp bags.

Investigators obtained a wiretap of the phone of Sherron Whitehead, a mid-level street heroin distributor, who obtained his heroin from Bush. They then tapped Bush's cellphone and set up a pole camera overlooking Bush's home. In these conversations, Bush described his full-time work in his heroin-processing lab and how even breathing in the fumes there made him high. Bush also repeatedly referenced his "dude," "man," or "guy" who advanced the money to make purchases from Mishra, who warned him that he thought Mishra's shop had been raided, and with whom Bush coordinated the purchase of distinctively marked stamp bags. Investigators determined that this "dude" was Willis Wheeler. Through the pole camera footage, officers identified Wheeler, who would text Bush that he was on his way over, arrive at Bush's home carrying bags of materials, use a remote in his car to open the garage door, and often stay for seven or more hours.

3

Conversations between Bush and his wife indicated that Wheeler was trusted to be in the basement heroin lab even when Bush was not home.

Police executed simultaneous search warrants on Bush and Wheeler (as well as their homes and cars) on March 14, 2012. Given the investigators' belief that Wheeler had in the past spotted their surveillance, they followed Wheeler's car by airplane to ascertain where he stopped before going to Bush's. Wheeler led investigators to an apartment at 500 Mills Avenue, where he stopped before continuing towards Bush's, at which point officers arrested him. The search of his car turned up 186 grams of 86% pure heroin in his glove compartment; $28,000 in cash, rubber bands, bill-wraps for thousand-dollar bills, and a loaded handgun were found at his home. After obtaining a warrant, police searched the Mills Avenue apartment and found drug paraphernalia and a locked safe containing approximately 760 grams of heroin.

During the simultaneous search of Bush's home, police discovered Bush's heroin lab, guns, drug paraphernalia, and a large amount of heroin of varying purities (that is, at different stages of the cutting or diluting process, in preparation for sale). Specifically, officers discovered 287 grams of unbagged 43% pure heroin, 761 grams of unbagged 20.5% pure heroin, and nearly 8,900 stamp bags containing between 26% and 28% pure heroin. Officers also found six unregistered firearms, including four handguns, a sawed-off shotgun, and a rifle. After being read his rights under Miranda v. Arizona, 384 U.S. 436, 440 (1966), Bush waived them and confessed to having twelve bags of heroin in his underwear, that everything in the house belonged to him, and that he kept the guns for

4

protection against people trying to kill him. Responding to a remark from one of the officers, Bush stated: "I'm a criminal." Appendix ("App.") 1305-06.

Nearly a year later, on February 26, 2013, officers searched Rock America and Mishra's home. Officers found $907,000 in cash, 45 cases of stamp bags, as well as diluents and other drug paraphernalia. More stamp bags, diluents, and paraphernalia were found at Rock America and at Mishra's home. These included many stamp bags containing the same distinctive marking as those Bush had ordered from Mishra over the phone, including several identical to those that had been seized from Bush's house.

A superseding indictment was issued in March 2013 against Bush, Mishra, and Wheeler. As relevant here, Count One charged all three with conspiracy to distribute one kilogram or more of heroin from August 2011 to March 2012, in violation of 21 U.S.C. § 846. Count Two charged Bush with possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Count Four charged Bush with possession of a firearm by a convicted felon, in violation of 18 U.S.C. 922(g). Count Five charged Bush with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Count Six charged Bush with possession of a sawed-off shotgun, in violation of 26 U.S.C. § 5861(d). The other counts were against only Wheeler. All three defendants pleaded not guilty. Mishra was later indicted on separate felony charges which remain pending in the District Court.

Mishra moved for a severance in April 2014, but the District Court denied that motion and scheduled all three defendants to be tried jointly. Based on a numerous motions by all parties, trial was continued without issue until June 2015. Wheeler then

5

sought a continuance of trial to December 2015, due to his counsel's medical concerns. Bush objected to this continuance, but the District Court found that it was necessary and granted it. Wheeler's counsel died suddenly in October 2015, prompting the District Court to then sever Wheeler to be tried separately.[1] Bush and Mishra's joint trial began in December 2015. The jury convicted Bush and Mishra on all counts, the District Court sentenced them, and these timely appeals follow.[2]

## II.

Bush and Mishra each bring separate challenges to their convictions. Mishra also challenges his sentence. We will address each defendant's arguments in turn.

## A.

Bush raises the five following issues on appeal, that: (1) a six-month continuance entered to accommodate co-defense counsel's health troubles violated his speedy-trial rights; (2) the Government's use of audio-recordings in its opening statement prejudiced him; (3) the Government's description of the anti-personnel purpose of a sawed-off shotgun was prejudicial; (4) the case agent's testimony as to coded drug language was improper opinion testimony by a lay witness made without personal knowledge; and (5) he is entitled to a new trial because the evidence only supported finding him guilty of a crime that was a variance from the indictment on the conspiracy charge. We will address each in turn.

---

[1] Wheeler was convicted of all the counts he faced in May 2016.
[2] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

6

1.

First, Bush argues that the District Court erred in denying his motion to dismiss for a violation of his right to a speedy trial, under both the Constitution and the Speedy Trial Act, 18 U.S.C. § 3161. We review the District Court's legal conclusions regarding a speedy trial claim de novo, and its factual conclusions for clear error. United States v. Rivera Const. Co., 863 F.2d 293, 295 n.3 (3d Cir. 1988). We review a continuance granted "after a proper application of the statute to established facts" for abuse of discretion. Id. The Speedy Trial Act requires that trial commence within seventy days of a defendant's initial appearance. See 18 U.S.C. § 3161(c)(1). However, certain periods of delay are excluded from the computation of this time. Id. This includes "[a]ny period of delay resulting from a continuance granted" where "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Id. § 3161(h)(7)(A). Moreover, "after defendants are joined for trial, 'an exclusion applicable to one defendant applies to all codefendants.'" United States v. Arbelaez, 7 F.3d 344, 347 (3d Cir. 1993) (quoting United States v. Novak, 715 F.2d 810, 815 (3d Cir. 1983)).

Bush contends that the District Court violated his speedy trial rights when it continued the trial from June 8, 2015 to December 1, 2015. The District Court granted this continuance, on the motion of then-co-defendant Wheeler and over Bush's objection, so that Wheeler's retained counsel could receive necessary medical treatment. The District Court found that a continuance for this reason served the ends of justice and continued the trial to December 2015, when Wheeler's counsel believed he would be able to proceed. Bush argues that this delay was unreasonable under the circumstances because the District Court did not

7

require sufficient documentation of Wheeler's counsel's medical condition, because there was no guarantee Wheeler's counsel would recover in time for a December trial, and because he or Wheeler could have been severed from the case. We disagree. The District Court did not abuse its discretion in continuing the trial to accommodate Wheeler's counsel's serious medical needs. See United States v. Dignam, 716 F.3d 915, 922 (5th Cir. 2013). And, because the continuance was a valid exclusion from the speedy trial clock for one co-defendant, it was valid as to all co-defendants, including Bush. See Arbelaez, 7 F.3d at 347.[3]

2.

Next, Bush argues that the District Court erred by permitting the Government to play audio recordings of recorded phone calls during its opening statement. We review the District Court's application of the Federal Rules of Evidence for abuse of discretion. United States v. Duka, 671 F.3d 329, 348 (3d Cir. 2011). Demonstrative exhibits may be used in opening statements as long as the prosecution "avoids references to matters that cannot be proved or would be inadmissible." United States v. De Peri, 778 F.2d 963, 979

---

[3] Bush raises the alternative argument that the entire delay between his March 2012 arrest and December 2015 trial violated his constitutional right to a speedy trial. The Supreme Court has articulated four factors to be considered in a constitutional speedy trial claim: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972). Bush's claim fails because although there was a 45-month delay, he or his co-defendants sought the continuances that caused the vast majority of this delay. The only one of these continuances to which Bush objected was the final six-month continuance from June to December 2015 due to Wheeler's counsel's medical issues. The Government was responsible for only three continuances totaling approximately two-and-a-half months. Bush also did not file a speedy trial motion until October 2015. Finally, Bush "neither suffered from a presumption of prejudice nor has he identified a specific occurrence of prejudice." United States v. Claxton, 766 F.3d 280, 297 (3d Cir. 2014). Thus, a balancing of these factors demonstrates that his speedy trial claim is without merit.

(3d Cir. 1985). During the Government's opening statement, it referred to and played clips from eight recorded phone calls, all of which were eventually admitted as evidence. See App. 312, 511-12. Bush does not challenge the admissibility of this evidence on appeal. The District Court also instructed the jury that counsel's arguments in opening statements were not evidence. Because the phone calls were admissible, the District Court did not abuse its discretion by permitting the Government to play the recordings for the jury as part of its opening statement.

3.

Bush next argues that the Government committed misconduct by stating that the purpose of Bush's sawed-off shotgun was to kill. Bush failed to raise this argument below, so we will review it for plain error. United States v. Poulson, 871 F.3d 261, 270 (3d Cir. 2017).[4] In its opening statement, the Government showed Bush's sawed-off shotgun to the jury and argued that it had no sporting use but was only useful for killing people. The Government's firearms expert later testified consistently. Although he did not object at trial, Bush now argues that the purpose of the shotgun was irrelevant to any of the charges against him and that there was no evidence of violence during the course of the conspiracy. He argues that the statement's admission was plain error because these statements inflamed the jury's passions and prejudices. We disagree.

---

[4] Under this standard, we will "grant relief only if we conclude that (1) there was an error, (2) the error was 'clear or obvious,' and (3) the error 'affected the appellant's substantial rights.' If those three prongs are satisfied, we have 'the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" United States v. Stinson, 734 F.3d 180, 184 (3d Cir. 2013) (citations omitted) (quoting Puckett v. United States, 556 U.S. 129, 135 (2009)).

The Government introduced the sawed-off shotgun and accompanying expert testimony as evidence that Bush possessed a firearm that was used in furtherance of a drug trafficking crime, as required to prove a violation of 18 U.S.C. § 924(c)(1). The testimony that the sawed-off shotgun was only useful for killing humans, and not for hunting, was relevant to show that it was likely used in connection with Bush's drug trafficking. This was corroborated by Bush's own statements, introduced as evidence, that he possessed guns because people were trying to kill him and that he once threatened someone by putting a gun to that person's head. In light of these statements, the admission of this testimony about the purpose of a sawed-off shotgun would not prejudice the jury by inflaming their passions in a way that would amount to plain error.

4.

Bush next argues that the District Court erred by permitting the Government's case agent, Allegheny County Sheriff's Deputy Richard Barrett, to interpret coded language in three recorded phone conversations without being qualified as an expert. Bush argues that Barrett's opinions about these three calls were not rationally based on his perception or personal knowledge. Bush did not raise this specific Federal Rule of Evidence 701 objection below, so we review for plain error. Cf. United States v. Iglesias, 535 F.3d 150, 158 (3d Cir. 2008).

Rule 701 permits lay witnesses to testify concerning their opinions to the extent that those opinions are "rationally based on the witness's perception," are "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and are "not based on scientific, technical, or other specialized knowledge within the scope of

Rule 702." Fed. R. Evid. 701. We have held that "Rule 701 means that a witness is only permitted to give her opinion or interpretation of an event when she has some personal knowledge of that incident." United States v. Fulton, 837 F.3d 281, 291 (3d Cir. 2016). This evidence is admissible because it "has the effect of describing something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event." Id. (quoting United States v. Freeman, 730 F.3d 5990, 597 (6th Cir. 2013)).

Deputy Barrett had sufficient personal knowledge to provide his testimony concerning the three challenged phone calls due to his involvement in the surveillance and investigation of the conspiracy and his review of the evidence and other investigation materials. Barrett supervised surveillance of Bush and other co-conspirators, helped plan the surveillance and arrest of Wheeler, and was present at Mishra's arrest. Barrett also reviewed pole camera footage, examined seized evidence such as stamp bags and diluents, studied lab reports, and perused reports and evidence seized by others in the course of the investigation. Additionally, he listened to and reviewed all of the wiretapped calls between the co-conspirators. This was sufficient to establish Barrett's personal knowledge. Bush cannot show that the District Court plainly erred by permitting Barrett to offer this challenged testimony under these circumstances.

5.

Finally, Bush argues that the jury's verdict constituted an improper variance from the indictment, which charged a single conspiracy, whereas he contends the proof at trial showed only that he was part of multiple conspiracies. Bush never argued below that a

11

variance occurred, so we review for plain error. We have held that "[w]here a single conspiracy is alleged in the indictment, there is a variance if the evidence at trial proves only the existence of multiple conspiracies." United States v. Perez, 280 F.3d 318, 345 (3d Cir. 2002) (quoting United States v. Kelly, 892 F.2d 255, 258 (3d Cir. 1989)). To prevail on this claim, Bush must demonstrate both that there was such a variance, and that one of his substantial rights were prejudiced by that variance. Id. Because whether the evidence was sufficient to established a single conspiracy is a question of fact for the jury, "[w]e will sustain the jury's verdict if there is substantial evidence, viewed in the light most favorable to the Government, to support a finding of a single conspiracy." Id.

We have reviewed the evidence presented to the jury and conclude that there was sufficient evidence to support the jury's finding that Bush was involved in a single conspiracy. In determining whether there was a single conspiracy as opposed to multiple conspiracies, we consider: (1) whether the conspirators' shared a common goal; (2) whether the result of the conspiracy would not continue without the continuous cooperation of the conspirators; and (3) the extent to which there is overlap in the various dealings of the conspiracy's participants. See United States v. Kemp, 500 F.3d 257, 287 (3d Cir. 2007).

The evidence supports a finding that there was a single conspiracy that had the common goal of selling heroin to profit its members, which included Bush, Wheeler, Mishra, Whitehead, and others. The evidence was sufficient to support the Government's theory that the continuous cooperation of each of these members was critical to the conspiracy's success. Wheeler supplied the raw heroin, Mishra supplied the materials to process and package that heroin, Bush processed and packaged it in his lab, and Whitehead

12

and other street-level distributors sold the heroin. The evidence established that Bush knew and worked with all of these members of the conspiracy, and that these other members knew of their counterparts' roles and that they were part of a larger operation, even if they did not know their counterparts' names. This is sufficient to support the jury's conclusion that there was a single conspiracy. See Perez, 280 F.3d at 347; United States v. Padilla, 982 F.2d 110 (3d Cir. 1992) ("To establish a single conspiracy, the prosecutor need not prove that each defendant knew all the details, goals or other participants.").

Additionally, even if we concluded that there was a variance, it would not warrant reversal because Bush cannot show that he was prejudiced. A defendant is not prejudiced by a variance if "the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial," and if it does not place the defendant in danger of being "prosecuted a second time for the same offense." United States v. Daraio, 445 F.3d 253, 262 (3d Cir. 2006) (quoting United States v. Schoenhut, 576 F.2d 1010, 1021–22 (3d Cir. 1978)). Bush has not advanced any argument that he was unable to prepare a defense or was surprised at trial. Nor has he shown that the alleged variance places him in danger of a subsequent prosecution. Accordingly, he has not shown that if there were a variance that he has been prejudiced by it.[5]

---

[5] Further, because he was a member of each of the multiple conspiracies that he contends were established by the evidence at trial, the same evidence would still be admissible against him, and thus he was not prejudiced by the "possibility of evidence spillover." Kemp, 500 F.3d at 291.

B.

Mishra raises the five following issues on appeal, that: (1) the indictment against him should be dismissed because he was only a supplier and the prosecution against him was vindictive; (2) certain evidence should not have been admitted because it was seized outside the scope of the alleged conspiracy; (3) the District Court improperly sanctioned his lawyers and impeded his ability to present a fair defense by preventing him from asking questions about the legality of the merchandise he sold; (4) the evidence was insufficient to show that he was a participant in the conspiracy; and (5) the District Court erred in calculating the amount of heroin for which he was responsible at sentencing. We will address these arguments in turn.

Mishra's first few arguments all revolve around his contention that because the stamp bags, diluents, and other drug paraphernalia that he sold were legal to sell, he cannot be liable as a co-conspirator even though he supplied those items to a drug conspiracy. He argues that the District Court erred in not granting his motion to dismiss the indictment on these grounds, that the District Court abused its discretion in limiting his cross-examination on this issue, and that the evidence was insufficient to support his conspiracy conviction. Because we disagree with Mishra's position in this regard, we will affirm these decisions of the District Court.

1.

Here, a review of the indictment demonstrates that, "assuming all of th[e] facts [set forth therein] as true, a jury could find that the defendant committed the offense for which he was charged." United States v. Huet, 665 F.3d 588, 596 (3d Cir. 2012).

14

Mishra's contentions that his conduct was legal goes to the sufficiency of the evidence against him and not to the sufficiency of the indictment. Because "a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence," the District Court did not err in denying Mishra's motion to dismiss the indictment. United States v. DeLaurentis, 230 F.3d 659, 660 (3d Cir. 2000).[6]

2.

Mishra contends that the District Court erred when it entered, and subsequently enforced, a pretrial order that precluded him from eliciting testimony from prosecution witnesses about the legality of the stamp bags and diluents that he sold.[7] We disagree. The District Court found that cross-examination of Government witnesses on this topic was irrelevant and prejudicial. It also found that the witnesses were not qualified as experts to give the legal conclusions that Mishra's counsel was attempting to elicit. The District Court did not abuse its discretion in finding that the independent legality of the items Mishra sold was not relevant to the charge against Mishra that he sold these items to Bush for heroin production to further the goal of the conspiracy, which was to profit from the sale of heroin. It properly determined that Mishra's argument — that he could not be convicted of conspiracy because the items he sold were not outlawed — risked

---

[6] On appeal, Mishra also argues that the indictment should be dismissed because he was the target of selective and vindictive prosecution by the Government. Because he did not raise this argument in his pretrial motion, it is forfeited. See United States v. Salahuddin, 765 F.3d 329, 350 (3d Cir. 2014) (citing Fed. R. Crim. Pro. 12(b)(3)(A)).

[7] Mishra also challenges the District Court's sanctioning of his trial counsel for repeatedly violating this order. His counsel never appealed the sanctions order entered against them, so Mishra cannot raise that issue as part of his own appeal.

15

confusing the jury because it was an incorrect statement of the law. See Direct Sales Co. v. United States, 319 U.S. 703, 709-11 (1943). Mishra was permitted to, and effectively did, cross-examine the Government's witnesses on a host of other issues. Thus, Mishra has not shown that the District Court's decision amounted to a denial of his ability to mount an adequate defense. See United States v. Adams, 759 F.2d 1099, 1110 (3d Cir. 1985) ("A restriction will not constitute reversible error unless it is so severe as to constitute a denial of the defendant's right to confront witnesses against him and it is prejudicial to substantial rights of the defendant.").[8]

3.

We have held that "a 'particularly deferential' standard of review" is applied "to a challenge to the sufficiency of evidence supporting a jury verdict." United States v. Peppers, 302 F.3d 120, 125 (3d Cir. 2002) (quoting United States v. Cothran, 286 F.3d 173, 175 (3d Cir. 2002)). Under this standard, we will sustain the verdict if "'any rational juror' could have found the challenged elements beyond a reasonable doubt, viewing the evidence in the manner that is most favorable to the government, neither reweighing evidence, nor making an independent determination as to witnesses' credibility." Id. (quoting Cothran, 286 F.3d at 175). To prove "a drug-trafficking conspiracy in violation of 21 U.S.C. § 846,

---

[8] In addition, even if this were error, it would be harmless, because Mishra's attorney was permitted to elicit a statement from one prosecution witness that stamp bags could be used for lawful purposes and Mishra also took the stand himself and testified to his belief that his conduct was legal. Thus, he was given ample opportunity to present this theory to the jury, and we are convinced that it is highly probable that the jury would have convicted Mishra even if he had been allowed fully to cross-examine the Government witnesses to the extent he desired. See United States v. Casoni, 950 F.2d 893, 919 (3d Cir. 1991).

16

the government must establish: (1) a shared unity of purpose between the alleged conspirators, (2) an intent to achieve a common goal, and (3) an agreement to work together toward that goal." United States v. Bailey, 840 F.3d 99, 108 (3d Cir. 2016).

Mishra's main argument on this point is that one who sells legal goods cannot be guilty of a criminal conspiracy involving those items. However, that is not a correct statement of the law. It has long been established that the sale of otherwise legal items to co-conspirators with the knowledge and intent that they would be put to illicit use is sufficient to constitute participation in the conspiracy. See Direct Sales Co, 319 U.S. at 709-11.

We have reviewed the evidence presented at trial, and it is sufficient to support the jury's conclusion that Mishra knowingly participated in the conspiracy and enjoyed more than a simple buyer–seller relationship with Bush. This included evidence that Mishra sold Bush stamp bags and diluents for as many as 14 years, on a standardized monthly schedule, for payments of up to $5000. Mishra's yearly revenue from these sales to Bush far exceeded the annual revenue Mishra reported to the IRS for all of Rock America's annual sales from 2010 through 2012. This also included evidence that Mishra operated Rock America as a one-stop shop for heroin dealers, that he concealed the stamp bags and diluents behind the counter and in his storeroom, that he was concerned with how the presence or rumors of law enforcement would affect his sales, and that he helped and offered to help mix the diluents for Bush's recipe. Taking this and the other evidence into account, a reasonable juror could conclude that Mishra sold to Bush knowing of Bush's heroin sales and intending to further, so as to profit from, that venture. See Bailey, 840 F.3d at 108. Because the jury's verdict "does not 'fall below the threshold of bare rationality,'"

17

it is sufficient, and we must uphold it. United States v. Caraballo-Rodriguez, 726 F.3d 418, 431 (3d Cir. 2013) (en banc) (quoting Coleman v. Johnson, 566 U.S. 650, 656 (2012)).

4.

Next, Mishra brings a challenge under Federal Rule of Evidence 404(b) to the District Court's admission of evidence seized at his house and from Rock America during his arrest in February of 2013. Mishra failed to raise this argument below, so we will review it for plain error. Poulson, 871 F.3d at 270. Mishra argues that this evidence seized in 2013 was inadmissible because it was outside the scope of the conspiracy, which he contends ended when Bush was arrested in 2012. He contends that the cash and paraphernalia seized was admitted without a showing that it was relevant or necessary to the charged conspiracy. We disagree.

The District Court did not plainly err in the admission of this evidence because it was intrinsic to showing Mishra's involvement in the conspiracy. Other evidence showed that Bush placed an order with Mishra for his distinctive stamp bags in February 2012, but was arrested before he was able to retrieve that order. Some of the stamp bags seized from Rock America during Mishra's 2013 arrest had the same distinctive markings as the ones Bush ordered. A reasonable juror could believe the Government's theory that these were the same bags Bush had ordered. As to the cash seized from Mishra's home, he admitted that that money originated with cash-paying Rock America customers; thus, the jury could reasonably conclude that this money constituted the fruits of the charged conspiracy. "Rule 404(b) excludes only extrinsic evidence, or evidence of acts that are not the basis of the current prosecution. It does not exclude intrinsic evidence, which

18

either 'directly proves' or 'facilitate[s]' the charged offense." United States v. Davis, 726 F.3d 434, 441 n. 5 (3d Cir. 2013) (quoting United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010)). This evidence was relevant to directly proving Mishra's involvement in the charged conspiracy. Accordingly, it does not fall within the ambit of Rule 404(b), and as such the District Court did not plainly err by admitting it.

5.

Finally, Mishra challenges the District Court's calculation of his sentence. He contends that it employed an arbitrary methodology in calculating that the conspiracy involved up to ten kilograms of heroin, and then sentencing Mishra based on that amount. We review the District Court's factual findings as to quantity of drugs at sentencing for clear error. United States v. Sau Hung Yeung, 241 F.3d 321, 322 (3d Cir. 2001). At sentencing, the Government bears the burden of proving drug quantities by a preponderance of the evidence. United States v. Self, 681 F.3d 190, 201 (3d Cir. 2012). "Where there is no drug seizure or the amount seized does not reflect the scale of the offense," the Guidelines counsel the court to "approximate the quantity of the controlled substance." United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1 cmt. n.5. In a conspiracy case, this calculation involves a consideration of the defendant's relevant conduct, which includes all acts of others taken within the scope, in furtherance of, and with a reasonable foreseeable connection to the conspiracy. Id. § 1B1.3(a)(1)(B). And in a drug conspiracy case, it includes "all quantities of contraband that were involved in transactions carried out by other participants," as long as they are within the scope of and have a foreseeable connection to the conspiracy. Id. § 1B1.3(a)(1)(B) cmt. n.3(D).

19

Here, the District Court's finding that Mishra was responsible for between three and ten kilograms of heroin is soundly supported in the record. The District Court arrived at this estimate by multiplying the amount of heroin contained in each individual stamp bag recovered from Bush's laboratory by the number of stamp bags Bush ordered from Mishra each month to determine that the conspiracy processed approximately one kilogram of heroin every month. The District Court then multiplied that by the seven months over which the charged conspiracy lasted to determine that the amount of heroin fell within the Guideline's three to ten kilogram range for a base offense level of 32. The District Court's methodology was sound and was supported by a preponderance of the evidence. See United States v. Paulino, 996 F.2d 1541, 1545 (3d Cir. 1993). Accordingly, the District Court did not clearly err in finding Mishra responsible for between three and ten kilograms of heroin and sentencing him under the resulting Guidelines' range.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.